**From:** dbooth@boothsweet.com
**Subject:** Re: Craig v. PopMatters Media, Inc., No. 18-cv-1713 (S.D. Ill.)
**Date:** October 8, 2018 at 11:57 AM
**To:** Richard Liebowitz  RL@liebowitzlawfirm.com

Mr. Liebowitz,

I explained last week that the Southern District of Illinois has no jurisdiction over my client, and that I will be forced to prepare and file a motion to dismiss unless you withdraw the claim by close of business on October 8. That's today. When I informed you of that last week, you responded within an hour offering to transfer the case to the Northern District. But most of a week has passed and the docket does not reflect any change.

My client was served on September 27 and my deadline to respond to the complaint draws near. If I have to take on the senseless, wasteful costs of a motion to dismiss in the Southern District, I will also move to have you sanctioned and forced to bear the price of my services. Unless you want to face an attorney's fees award, you must withdraw the case today.

Thank you.

Sincerely,

Dan Booth
Booth Sweet LLP
32R Essex Street #1A
Cambridge, MA 02139
(617) 250-8629
(617) 250-8883 fax
dbooth@boothsweet.com
http://boothsweet.com

> On Oct 4, 2018, at 1:15 AM, dbooth@boothsweet.com wrote:
>
> Mr. Liebowitz,
>
> We have local counsel in Chicago. Please inform when the case is in the Northern District. We will gladly waive service.
>
> While you're at it, I note that you filed three other cases in the Southern District of Illinois against Chicago businesses last month: Stridiron v. The India Tribune of Chicago, inc. (18-cv-1732), Yang v. BlackDoctor, inc. (18-cv-1733), and Ward v. Consequence Holdings, LLC (18-cv-1734). You can't have had a good faith basis for filing those cases downstate or continuing to pursue them there. Please inform when those cases are in the Northern District as well. Thank you.
>
> Sincerely,
>
> Dan Booth
> Booth Sweet LLP
> 32R Essex Street #1A
> Cambridge, MA 02139
> (617) 250-8629
> (617) 250-8883 fax
> dbooth@boothsweet.com
> http://boothsweet.com

> On Oct 4, 2018, at 12:53 AM, Richard Liebowitz <RL@liebowitzlawfirm.com> wrote:
>
> Dear Mr. Booth,
>
> It is an iconic photograph. The case you cite is were their were similar prices to what Plaintiff has licensed things for also appear on Getty. Mr. Craig does not have comparable licenses on Getty. We are happy to transfer venue if your client wishes and will litigate in the Northern District. Please let me know and I can put together a short letter. Are you admitted in Illinois?
>
> Best,
>
> Richard Liebowitz, Esq.
> Liebowitz Law Firm, PLLC
> t.516-233-1660
>
>
> ****************************************************************
>
> This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be
> subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not

subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

*******************************************************************

On Thu, Oct 4, 2018 at 12:25 AM dbooth@boothsweet.com <dbooth@boothsweet.com> wrote:

Mr. Liebowitz,

According to the copyright registration certificate, the photo was taken in 1970 or 1971 but unpublished as of late 2014. It has had no opportunity to become iconic. By contrast, the David Gahr photo I sent you earlier today is familiar to any Miles Davis fan from the cover of A Tribute to Jack Johnson. Yet Getty licenses it for a fraction of your counteroffer. Again: https://media.gettyimages.com/photos/jazz-trumpeter-and-composer-miles-davis-performs-with-gary-bartz-on-picture-id137475559.

Your position is that Getty's licensing rates are "not relevant at all" to the market rates of non-Getty photographers. That is nonsense on its face. And from you, it's totally two-faced. In May, you and your firm took exactly the opposite position in Romanowicz v. Alister & Paine, No. 17-cv-8937, insisting that Getty is a "leader in the stock photo licensing industry" and "its prices reflect what a willing seller and a a willing buyer would agree upon." You and your firm also argued for damages calculations based on comparable Getty licenses in June, in Terry v. Masterpiece Advertising Design, No. 17-cv-8240. Neither Craig Terry nor Adam Romanowicz appear to be represented by Getty, but your firm pushed for consideration of Getty rates. Please spare me the hypocrisy going forward.

From your hundreds of copyright cases in the Southern District of New York, you cite four as benchmarks for damages awards. But you have never sued my client in the Southern District of Illinois. In the Seventh Circuit, where you have not practiced long, courts typically expect statutory damages to bear at least some reasonable relationship to actual damages. As I have shown you, your $25,000 offer is stratospherically out of proportion. You would be wise to read up on how the Seventh Circuit views copyright plaintiffs who pursue claims for damages that they cannot hope to recover; the presumption in favor of awarding fees to prevailing defendants is very strong.

You have ignored my request for any prior licenses for the photo, or for comparable photos, that could provide a different frame for comparison. Without that, our dialogue cannot move forward. I prefer to exchange discovery informally as early as possible to speed up litigation; indeed, I have already volunteered substantial material information about my client. But I take it that you do not. I expect to get all I need through discovery requests after the scheduling conference..

So until then, let's change gears and address something else.

Can you give me a good reason why you expect my client to defend a claim in the federal courthouse in East St. Louis? That is about 300 miles from the address you have identified, in the complaint, as PopMatters's place of business. The Dirksen Federal Building in Chicago, by contrast, is about six miles from the PopMatters address. They are not located in the Southern District by any definition and both personal jurisdiction and venue are improper. Courts in the Seventh Circuit analyze venue by treating each district as if it were its own state. A defendant must reside, or be found, in a district with which it has sufficient contacts to be rendered amenable to personal jurisdiction. Incorporation in the state, but outside the district, is insufficient. Furthermore, the copyright venue statute, 28 U.S.C. § 1400(a), governs all copyright claims, not Section 1391's general venue provision. And under Section 1400, the focus is whether the defendant resides (or may be found) in a "particular judicial district," not somewhere else in the state. *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 445-46 (7th Cir. 1993). PopMatters resides in Chicago, maintains its sole place of business in Chicago, and transacts no business in the Southern District. The result should be obvious.

Unless I hear from you by close of business Monday, October 8, that you will withdraw the claim from the Southern District, I will be forced to move to dismiss under Fed. R. Civ. P. 12(b)(2) and (3). You can expect to lose that motion, because suing in that District is frivolous on its face. So if you make me draft and file the motion, I promise you this: I will move for an award of every penny of attorney's fees and costs that you impose on my client by making me litigate over your obviously baseless allegations of jurisdiction and venue.

Thank you.

Sincerely,

Dan Booth
Booth Sweet LLP
32R Essex Street #1A
Cambridge, MA 02139
(617) 250-8629
(617) 250-8883 fax
dbooth@boothsweet.com
http://boothsweet.com

On Oct 3, 2018, at 10:33 PM, Richard Liebowitz <RL@liebowitzlawfirm.com> wrote:

Dear Mr. Booth,

Dear Mr. Booth,

Thank you for your e-mail. My client strongly believes the infringement was willful. This is an iconic photograph of Miles Davis. Your client is in the publishing industry is well aware about copyright laws. My client does not put his work on Getty Images, thus their licensing information is not relevant at all in this litigation. Numerous courts have evaluated single photograph infringements at least $30k plus costs and attorneys fees. See *Chevrestt v. Craft Nation Inc.* (1:17-cv-9232-JSR); *Lee v. White Cat Media, Inc.* (1:17-cv-8122-JSR); *Miller v. AllHipHop.com LLC* (1:16-cv-2744-RA), Zlozower v. Rukkus, Inc. (1:17-9510-RWS). The $25,000 offer is for statutory damages in line with what Courts feel is appropriate. If litigation continues we will seek all our attorneys and costs against your client.

We look forward to hearing from you.

Best,

Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
t.516-233-1660


*****************************************************************

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

*****************************************************************

On Wed, Oct 3, 2018 at 8:21 PM <dbooth@boothsweet.com> wrote:
Mr. Liebowitz,

Thank you for your response. I'd like to clear some things up to see if we can have a constructive dialogue about settlement.

PopMatters Media, Inc. ("PopMatters") runs a small, independent website of cultural criticism and analysis. It respects artists and did not intend any harm. It believed the photograph of Miles Davis was a licensed publicity photo, not an infringement. It was not aware of your client's allegation of infringement until it learned of the complaint, because you did not attempt to resolve the issue before filing suit. As a courtesy, PopMatters removed the photograph from its website immediately upon learning of the complaint, even before the complaint was served, though the complaint does not seek such relief, or any injunctive relief at all.

PopMatters made its Rule 68 offer in a genuine attempt to resolve the dispute in a manner that would show its respect for your client and respond to the complaint realistically and appropriately. In preparing the offer, PopMatters therefore took into consideration both any profits attributable to the use and the market value for a hypothetical license for the photograph.

PopMatters' profits from the use, if any, were no more than negligible. The photograph appeared only on one page, in connection with a review of the *Miles Ahead* soundtrack, for less than two years and five months; that is, from April 20, 2016 to September 19, 2018. According to Google Analytics, from April 20, 2016 to September 20, 2018, that review page had only 886 unique page views—that is, 886 unique viewers—and 2,278 page views total. PopMatters' only revenue from those page views would be for advertising at an average of $2CPM per page; that is, 2.278 times $2, or $4.556. But that figure is sadly high. Since about a quarter of all PopMatters readers use an adblocker their views do not display ads or generate advertising revenue, and the best estimate of revenue attributable to the page is 25% lower: $3.42 total. Further, the photo was used only on that page, so it did not drive any traffic to the page. The viewers who happened to see it came to the page in order to read the review. $3.42 is therefore a high estimate of any profit PopMatters could have gained from the use.

Courts look to comparable uses when considering the hypothetical lost licensing value of a copyright use. Here are two comparable images available for licensing through Getty Images:

https://media.gettyimages.com/photos/american-jazz-musician-and-composer-miles-davis-on-trumpet-performs-picture-id160941863
https://media.gettyimages.com/photos/jazz-trumpeter-and-composer-miles-davis-performs-with-gary-bartz-on-picture-id137475559

Like the photograph at issue in the lawsuit, both of these Getty photographs depict Miles Davis playing trumpet onstage in the summer of 1970, in black-and-white. For either image, Getty offers a license for online editorial use by a publication with a circulation of up to 50,000 at the following rates: $65 for three months, $117 for six months, $138 for one year, and $146 for two years. Accordingly, a two-year license is $8 more than a one-year license; applying the same rate of increase, a three-year license would presumably be available for $154. Such a license would last more than 24% longer than the 29 months of PopMatters' actual use, and would cover more than 56 times as many people as the 886 viewers who may have

months of PopMatters' actual use, and would cover more than 56 times as many people as the 886 viewers who may have seen the photo while it was on PopMatters' website.

Thus, PopMatters' actual profits cannot be as high as $3.42, and your client's hypothetical lost profits, if any, would be less than the $154 market rate for a substantially broader license for comparable works. PopMatters offered to settle the claim by paying more than five times those amounts combined, plus costs.

Your counteroffer weighs in at more than 158 times greater than this calculation of any conceivable actual damages. It does not bear any discernible relationship to any reasonable measure of damages. If you proposed it as part of a good-faith negotiation, and you expect a response in kind, please give my client a rational justification for your $25,000 counteroffer. For starters, please document any prior licensed use of the photograph, and provide copies of any licenses that your client has issued for the photograph for comparison.

I look forward to your substantiation.

Dan Booth
Booth Sweet LLP
32R Essex Street #1A
Cambridge, MA 02139
(617) 250-8629
(617) 250-8883 fax
dbooth@boothsweet.com
http://boothsweet.com

> On Oct 3, 2018, at 4:36 PM, Richard Liebowitz <RL@LiebowitzLawFirm.com> wrote:
>
> Mr. Booth,
>
> I am authorized to make an offer of $25,000. We look forward to hearing from you.
>
>> On Wednesday, October 3, 2018, dbooth@boothsweet.com <dbooth@boothsweet.com> wrote:
>> Dear Mr. Liebowitz,
>>
>> I am following up to confirm that you received this offer and to see if your client will accept it.
>>
>> If he will not, I would appreciate if you would permit my client an additional two weeks to respond to the complaint, that is, by November 1 rather than October 18.
>>
>> Either way, please let me know. I look forward to hearing from you.
>>
>> Regards,
>>
>> Dan Booth
>> Booth Sweet LLP
>> 32R Essex Street #1A
>> Cambridge, MA 02139
>> (617) 250-8629
>> (617) 250-8883 fax
>> dbooth@boothsweet.com
>> http://boothsweet.com
>>
>>> On Sep 27, 2018, at 12:42 PM, dbooth@boothsweet.com wrote:
>>>
>>> Dear Mr. Liebowitz,
>>>
>>> Thank you for discussing this case with me this afternoon. As we discussed, you agreed to accept service of the attached offer of judgment via email. Please confirm receipt.
>>>
>>> Your prompt attention to this offer will be greatly appreciated.
>>>
>>> Regards,
>>>
>>> Dan Booth
>>> Booth Sweet LLP
>>> 32R Essex Street #1A
>>> Cambridge, MA 02139
>>> (617) 250-8629
>>> (617) 250-8883 fax
>>> dbooth@boothsweet.com
>>> http://boothsweet.com
>>>
>>> <Rule 68 Offer - PopMatters.pdf>

<Rule 68 Offer - PopMatters.pdf>

--
Best,

Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
t.516-233-1660


************************************************************

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and
may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient,
you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail
and delete this message. Thank you.

************************************************************