IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GLEN CRAIG, | ) | Case No. 1:19-cv-05596 (RAG) |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S PETITION FOR AN** |
| | ) | **AWARD OF ATTORNEY'S FEES** |
| v. | ) | **UNDER 17 U.S.C. § 505 AND 28** |
| | ) | **U.S.C. § 1927** |
| POPMATTERS MEDIA, INC. | ) | |
| | ) | |
| Defendant. | ) | |

Defendant PopMatters Media, Inc. ("PopMatters"), the prevailing party in this abusive, abandoned copyright action, requests an award of attorney's fees, whether paid by plaintiff Glen Craig ("Craig") under the Copyright Act's fee-shifting provision, 17 U.S.C. § 505, or his counsel Richard Liebowitz ("Liebowitz") under the vexatious litigation statute, 28 U.S.C. § 1927.

**Procedural History**

This case is a sequel—the kind that costs more than it is worth, and that never should have been made. PopMatters' use of Craig's photograph online brought it less than $4 in profits, and Getty Images licenses comparable photographs for broader use at just $138. Doc. 14-5 pp. 2-3, Doc. 14-14. On that paltry basis Craig sued for copyright infringement twice, praying for $150,000 in damages plus fees, to seek a settlement far beyond any actual damages at stake. Doc. 14-4 p. 4, Doc. 1 p. 4. At each step, Craig proceeded despite flaws fatal to his claim. He has never denied that his licensee Legacy Recordings explicitly authorized PopMatters' online editorial use of the photograph. Doc. 14-2 ¶ 3, Doc. 14-6, Doc. 14-13. He also has not denied that the photograph was a work-for-hire, leaving him no standing to sue. See Doc. 21-6 p. 6.

He first raised the claim last year in *Craig v. PopMatters Media, Inc.*, No. 18-cv-1713, in the Southern District of Illinois (the "first action"). Declaration of Dan Booth ("Booth Decl.") ¶ 2. PopMatters served an $800 offer of judgment under Rule 68. *Id.* & Ex. A; Doc. 14-5 pp. 3-4. He countered, demanding $25,000. Booth Decl. ¶ 3, Doc. 14-5 pp. 2-3. PopMatters explained that personal jurisdiction was groundless and venue was improper downstate, and Craig filed a

1

notice dismissing the first action. Booth Decl. ¶¶ 4-5, Doc. 14-5 p. 1; Doc. 14-12. He revived his claim in this Court on August 19, 2019. Doc. 1. Over the following week, Craig made a $10,000 offer and did not respond when PopMatters renewed its $800 offer. Doc. 14-13, Doc. 14-14, Booth Decl. ¶¶ 4-5. On October 18, 2019, PopMatters moved for an order requiring Craig to pay the wasted fees incurred in the first action under Rule 41(d). Doc. 14. One day later Craig pulled the plug again, filing his second notice of dismissal. Doc. 16.

PopMatters provided its LR 54.3 disclosures to Liebowitz and sought to confer in good faith toward a potential compromise on the fees incurred in this Court. Doc. 21 p. 2. Liebowitz proved unprepared to confer, made materially deficient disclosures, and did not respond to requests to comply with LR 54.3(d). *Id.* pp. 3-4; Doc. 21-6. PopMatters moved for instructions and files this fee petition timely under LR 54.3(b) and the Court's instructions. Doc. 21, Doc. 23.

**Factual Background**

Craig is a music photographer. Doc. 5 ¶ 5. On assignment for the short-lived magazine *Zygote* in June 1970, he took a series of photographs of Miles Davis, including the photograph ("Photograph") at issue in this action, during Davis' four-night residency at the Fillmore East. *Id.* ¶ 7; Booth Decl. ¶ 6 & Ex. B. His Davis series then lay dormant, "tossed to the side," until the 2014 release of a box set drawing on Craig's photographs. *Id.* Sony Music Entertainment's Legacy Recordings division ("Legacy") released a four-CD box set of recordings of the Fillmore concerts, *Miles at the Fillmore - Miles Davis 1970: The Bootleg Series Vol. 3* ("*Fillmore*"), on March 25, 2014. Booth Decl. ¶ 7 & Ex. C. By an agreement dated February 18, 2014, Craig licensed Legacy's use of the Photograph and twelve other Davis photographs "inside the music packaging" of *Fillmore*, and further licensed the Photograph and one of the others "for publicity." Booth Decl. ¶ 8 & Ex. D p. 1; *id.* p. 4 (permitting "Packaging & Publicity Usage" of the Photograph). One Craig photograph appears on the CD digipak's back cover; twelve more by Craig are in the *Fillmore* booklet, including the Photograph. Booth Decl. ¶ 9 & Ex. E; see *id.* p. 9 (the Photograph). To promote *Fillmore*, Legacy sent advance copies and press materials to media

2

outlets, providing a copy of the Photograph with "editorial uses" by "Internet review outlets" expressly permitted. Booth Decl. ¶ 10 & Ex. F; Doc. 14-2 ¶ 3.

PopMatters runs popmatters.com, an independent website of cultural criticism and analysis. Doc. 5 ¶ 6; Doc. 14-2 ¶ 2. It received Legacy's *Fillmore* promotional materials and ran a *Fillmore* review on its website on March 27, 2014. Doc. 14-2 ¶¶ 3-4. On April 20, 2016, PopMatters ran the Photograph on its website with a review of the *Miles Ahead* soundtrack. *Id.* ¶ 5, Doc. 5 ¶ 10, Doc. 1-3, Doc. 5-3.

Craig discovered that use of the Photograph in February 2017. Doc. 5 ¶ 12. He did not contact PopMatters before filing suit to request that it pay a licensing fee or take the Photograph down. Doc. 14-2 ¶ 6, Doc. 14-5 p. 2. Liebowitz initiated the first action on September 11, 2018. Doc. 14-4. PopMatters immediately removed the Photograph from its website on learning of the complaint on September 19, 2018. Doc. 14-5 p. 2. Its *Miles Ahead* review page had only 886 unique viewers from April 20, 2016 to September 20, 2018 according to Google Analytics. *Id.* In that time, the gross revenue attributable to the page was $3.42 in advertising. *Id.* pp. 2-3.

Getty Images offers licenses for online editorial uses of other photographs that, like the Photograph, depict Davis onstage playing trumpet in the summer of 1970, in black-and-white, including the David Gahr photograph immortalized on the cover of Miles Davis' *A Tribute to Jack Johnson. Id.* pp. 1 & 3. A one-year license of those comparable photographs costs $138 for publications with a circulation of up to 50,000. *Id.* p. 3. Such a license would cover many more readers than saw the *Miles Ahead* page in the ten months before Craig discovered the usage.

## Legal Standards

"A plaintiff may dismiss a federal suit without prejudice to refiling. That privilege may be used only once. '[I]f the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.'" *Dvorak v. Granite Creel GP Flexcap I, LLC*, 908 F.3d 248, 249 (7th Cir. 2018) (quoting Fed. R. Civ. P. 41(a)(1)(B)). "The purpose of the 'two dismissal' rule, pointed out in numerous

decisions, is to prevent unreasonable abuse and harassment by plaintiff securing numerous dismissals without prejudice." *Sutton Place Dev. Co. v. Abacus Mortg. Inv. Co.*, 826 F.3d 637, 640 (7th Cir. 1987) (internal quotations and citations omitted). "The risk of repetitive litigation and forum-shopping is sharply limited by Rule 41(a)(1)(B)." *CFE Grp., LLC v. FirstMerit Bank, N.A.*, 809 F.3d 346, 351 n. 1 (7th Cir. 2015). The second dismissal is "with prejudice." *Id.*; *Dvorak*, 908 F.3d at 249 (same).

> A plaintiff's dismissal of a claim does not automatically "confer prevailing party status upon the defendant," if the defendant remains at risk of plaintiff re-filing the claim. *Oscar v. Alaska Dep't of Educ. & Early Dev.*, 541 F.3d 978, 982 (9th Cir. 2008). However, if a plaintiff is unable to re-file the dismissed claim in federal court, the defendant is the "prevailing party" on that claim. *Miles v. California*, 320 F.3d 986, 989 (9th Cir. 2003).

*Cobbler Nev., LLC v. Gonzales*, No. 3:15-cv-00866, 2016 WL 8677323, at 2 (D. Or. Dec. 2, 2016), *adopted in part*, 2017 WL 4498 (Jan. 4, 2017), *aff'd*, 901 F.3d 1142 (9th Cir. 2018).

The Copyright Act authorizes the Court to award "in its discretion … a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. A voluntary dismissal with prejudice confers prevailing party status on a copyright infringement defendant, permitting a claim for attorney's fees. *Bell v. Lantz*, 825 F.3d 849, 850 (7th Cir. 2016); accord *FM Indus. v. Citicorp Credit Servs., Inc.*, Civ. A. No. 07 C 1794, 2009 U.S. Dist. LEXIS 9263, *7-8 (N.D. Ill. Feb. 4, 2009), *aff'd*, 614 F.3d 335 (7th Cir. 2010) (reversing in part on other grounds).

> Common sense undermines the notion that a defendant cannot 'prevail' unless the relevant disposition is on the merits. … The defendant, of course, might prefer a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations. The defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision.

*CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1651 (2016). "[A] favorable ruling on the merits is not a necessary predicate to find that a defendant has prevailed." *Id.* at 1646.

Courts analyzing fee requests under Section 505 of the Copyright Act are guided by several nonexclusive factors approved by the Supreme Court: "frivolousness, motivation,

objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19 (1994) (quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). Section 505 "grants courts wide latitude to award attorney's fees based on the totality of the circumstances in a case." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016).

> The two most important considerations in determining whether to award attorneys' fees in a copyright case are the strength of the prevailing party's case and the amount of damages or other relief the party obtained. If the case was a toss-up and the prevailing party obtained generous damages, or injunctive relief of substantial monetary value, there is no urgent need to add an award of attorneys' fees. But if at the other extreme the claim or defense was frivolous and the prevailing party obtained no relief at all, the case for awarding attorneys' fees is compelling.
>
> *Assessment Techs. of WI, LLC v. Wire Data, Inc.*, 361 F.3d 434, 436-37 (7th Cir. 2004).
>
> When the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong. … For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from enforcing his rights.
>
> *Id.* at 437 (citing *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994)).

"A prevailing defendant in a copyright suit is presumptively entitled to an award." *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 658 F.3d 662, 667 (7th Cir. 2011). "The party responsible for creating excessive legal costs must bear them itself in the end." *Riviera Distribs. v. Jones*, 517 F.3d 926, 929 (7th Cir. 2002).

Likewise, an attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

> [A] court has discretion to impose § 1927 sanctions when an attorney has acted in an "objectively unreasonable manner" by engaging in "serious and studied disregard for the orderly process of justice," *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994); pursued a claim that is "without a

5

plausible legal or factual basis and lacking in justification," *id.*; or "pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound," *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989).

*Jolly Grp., Ltd. v. Medline Indus, Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).

"A lawyer's subjective bad faith is a sufficient, but not necessary, condition for § 1927 sanctions; objective bad faith is enough." *In re Lisse*, 921 F.3d 629, 641 (7th Cir. 2019) (citing *Hunt v. Moore Bros., Inc.*, 861 F.3d 655, 659 (7th Cir. 2017). "The standard for objective bad faith does not require a finding of malice or ill will; reckless indifference to the law will qualify." *Dal Pozzo v. Basic Mach. Co.*, 463 F. 3d 609, 614 (7th Cir. 2006) (*citing In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985)). "Because trial judges are best positioned to detect bad faith litigation conduct, they possess broad discretion in exercising the § 1927 power." *Lisse*, 921 F.3d at 641.

Section 1927 sanctions may be imposed for either factual claims or legal arguments without support. "Under § 1927, sanctions for filing a baseless claim properly may be imposed where those claims are not supported by the facts." *Walter v. Fiorenzo*, 840 F.2d 427, 435 (7th Cir. 1988). The Seventh Circuit "has upheld section 1927 sanctions ... [when] counsel raised baseless claims despite notice of the frivolous nature of these claims..." *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 2003) (collecting cases).

## Argument

I. **PopMatters Became the Prevailing Party in this Action upon Craig's Notice of Dismissal.**

The notice of dismissal Craig filed in this Court is with prejudice and makes PopMatters the prevailing party. Doc. 16. Under the two-dismissal rule, a second "notice of dismissal operates as an adjudication on the merits." Fed. R. Civ. P. 41(a)(1)(B). "If the plaintiff invokes Rule 41(a)(1) a second time for an 'action based on or including the same claim,' the action must be dismissed with prejudice." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394 (1990).

To prevail, a defendant does not require "a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations." *CRST Van*, 136 S. Ct. at 1646. "There is no indication that Congress intended that defendants should be eligible to recover attorney's fees only when courts dispose of claims on the merits." *Id.* Rather, "a litigant 'prevails' (for the purpose of fee-shifting statutes) when it obtains a 'material alteration of the legal relationship of the parties.'" *Riviera Distribs. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2002) (quoting *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 604 (2001)). "A voluntary dismissal of an action with prejudice works such alteration, because it constitutes an adjudication on the merits for purposes of *res judicata*, and any action so dismissed could not be brought again." *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 165 (2d Cir. 2014) (internal quotation and citation omitted). "Because Plaintiff[] cannot refile, the judgment has materially altered the parties' legal relationship." *Id.* at 166 (citing *Buckhannon*, 532 U.S. at 604). Accord *Claiborne v. Widsom*, 414 F.3d 715, 719 (7th Cir. 2005); *Green Aviation Mgmt. Co., LLC v. FAA*, 676 F.3d 200, 205 (D.C. Cir. 2012) (withdrawn complaint conferred prevailing party status where "dismissal with prejudice has *res judicata* effect").

The *res judicata* voluntary dismissal affording relief to PopMatters is as effective as a judicial order because it flows directly from Rule 41, as promulgated by the Supreme Court. See *Cooter & Gell*, 496 U.S. at 394. And "nothing in the language of Rule 41(a)(1)(i), Rule 11, or other statute or Federal Rule terminates a district court's authority to impose sanctions after such a dismissal." *Id.* at 395. Likewise, the Court may impose Section 1927 sanctions sought after a voluntary dismissal. See *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 703-04 (7th Cir. 2014).

"There is no question that a dismissal with prejudice makes the defendant the prevailing party for purposes of an award of attorney's fees under § 505." *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008) (citing *Claiborne*, 414 F.3d at 719). At least one district court, applying *CRST Van* under the Copyright Act, has found that a copyright "plaintiff's notice of voluntary dismissal of defendant makes defendant a 'prevailing

7

party' for purposes of the applicable fee-shifting statute." *Criminal Productions, Inc. v. Jenkins*, No. 2:16-CV-2704 JCM (PAL), 2018 U.S. Dist. LEXIS 52706, *13 (D. Nev. Mar. 29, 2018) (citing *CRST Van*, 136 S. Ct. at 1651). Other courts have found that *CRST Van* supports Section 505 awards to defendants even if the district court did not reach the merits, as when the plaintiff lacked standing, *Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 327-28 (1st Cir. 2017), *TufAmerica, Inc. v. Diamond*, No. 12-cv-3529 (AJN), 2016 U.S. Dist. LEXIS 90461, *4 n. 1 (S.D.N.Y. July 12, 2016), or was "incapable of maintaining an action" based on collateral estoppel, *Manhattan Review LLC v. Yun*, 919 F.3d 149, 153 (2d Cir. 2019).

Even before *CRST Van*, a voluntarily dismissed defendant could qualify as a prevailing party when "the plaintiff withdrew to avoid a disfavorable judgment on the merits." *Dean v. Riser*, 240 F.3d 505, 511 (5th Cir. 2001). In untenable cases like this one, Liebowitz's sue-and-settle tactics fit the bill. He has a renowned "propensity to take unreasonable positions and to omit crucial facts—or even to make outright misrepresentations—in an apparent attempt to increase costs and to extort unwarranted settlements." *Pereira v. 3072541 Can. Inc.*, No. 17-cv-6945 (RA), 2018 U.S. Dist. LEXIS 195406, *8 (S.D.N.Y. Nov. 15, 2018) (collecting cases).[1]

That pattern is manifest in this case. After raising his claim in the Southern District without even a pretextual basis for personal jurisdiction over PopMatters, Liebowitz offered to transfer venue. But he dithered and delayed for months before he withdrew, compounding PopMatters' expenses. Doc. 14-6 pp. 1-2, Doc. 14-11 p. 1. When he renewed suit, he did not dispute that PopMatters' use of the Photograph was licensed by Legacy and "a licensed publicity use is not an infringement." Doc. 14-13. Yet he still saw fit to troll for $10,000. *Id.* Liebowitz showed no interest in litigating the merits because the case had none, but he dragged PopMatters

---

[1] Courts routinely find cause to expect that Liebowitz will "voluntarily dismiss the case to avoid paying defendant any fees it may be owed." *Lee v. W Architecture & Landscape Architecture, LLC*, No. 18-cv-5820 (PKC) (CLP), 2019 U.S. Dist. LEXIS 89335, *4 (E.D.N.Y. May 28, 2019). See also *McDermott v. Monday Monday, LLC*, No. 17-cv-9230 (DLC), 2018 U.S. Dist. LEXIS 184049, *9 (S.D.N.Y. Oct. 26, 2018) ("As evidenced by the astonishing volume of filings coupled with an astonishing rate of voluntary dismissals and quick settlements in Mr. Liebowitz's cases in this district, it is undisputable that Mr. Liebowitz is a copyright troll.").

through putative litigation in two courts for more than a year. Having rebuffed his claims, PopMatters is now more than entitled to seek its fees as the prevailing party.

**II.     The Copyright Act and the Vexatious Litigation Statute Both Support an Award to PopMatters of its Reasonable Attorney's Fees.**

All relevant considerations support an award of attorney's fees under the Copyright Act. Liebowitz staked out objectively unreasonable, overly aggressive positions for Craig; raised an infringement claim too frivolous to bother trying to prove; and engaged in bad-faith, strong-arm tactical gamesmanship. This unjustifiable lawsuit calls for deterrence and due compensation.

The Court "should give substantial weight to the objective reasonableness of the losing party's position." *Kirtsaeng*, 136 S. Ct. at 1983. Yet "objective reasonableness can be only an important factor in assessing fee applications—not the controlling one." *Id*. at 1988. Thus, "a court may order fee-shifting … to deter … overaggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case." *Id*. at 1989 (citing *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 595 (6th Cir. 2008)).

It was objectively unreasonable to allege that PopMatters "is not, and has never been, licensed or otherwise authorized to reproduce, publically display, distribute and/or use the Photograph." Doc. 5 ¶ 13; see also *id*. ¶ 11. Craig had expressly permitted it. His license to Legacy allows use of the Photograph "for publicity." Booth Decl. ¶ 8 & Ex. D. In turn, Legacy licensed "editorial uses" by PopMatters and other "Internet review outlets" online. Booth Decl. ¶ 10 & Ex. F. Licensed use is not infringement. *I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996).

And it was frivolous for Craig to raise a claim for infringement of the Photograph against anyone, licensed or not, when he mustered no evidence to counter PopMatters' showing that his Davis series was work made for hire commissioned for *Zygote* and Craig had no standing to sue.

Because the Davis series was "created before 1978, the Copyright Act of 1909 governs the validity of the initial copyright[.]" *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F. 3d 1322, 1325 (9th Cir. 2000) (citing *Roth v. Pritikin*, 710 F.2d 934, 938

9

(2d Cir. 1983)); accord *Everts v. Arkham House Publ'rs, Inc.*, 579 F. Supp. 145, 148 (W.D. Wisc. 1984). "The 1909 Act provided protection for the 'authors' of copyrights, and defined 'author' to include an employer in the case of 'works made for hire.'" *Real Estate Data, Inc. v. Sidwell Co.*, 809 F.2d 366, 371 (7th Cir. 1987) (quoting 17 U.S.C. § 26 (1909 Act)). "The general rule is that, in the absence of an agreement to the contrary, the copyright belongs to the person commissioning the work, not the person creating the work." *Id.* (collecting cases).

> The work-for-hire doctrine of the 1909 Act does not foreclose an agreement between the parties that the contractor shall own the copyright, but rather it simply establishes a rebuttable presumption that can be overcome by evidence of a contrary agreement, either written or oral. … The intent of the parties is … the decisive factor, and the burden is on the independent contractor to demonstrate by a preponderance of the evidence that such an agreement was reached.

*Id.* (citations omitted). Courts construing the 1909 Act "generally presumed that the commissioned party had impliedly agreed to convey the copyright, along with the work itself, to the hiring party." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 744 (1989). This was an "almost irrebuttable presumption." *Easter Seal Soc'y for Crippled Children & Adults of La., Inc. v. Playboy Enters.*, 815 F.2d 323, 327 (5th Cir. 1987) (collecting cases).

Craig has neither shown nor claimed to have an agreement retaining any copyright in the Davis series he photographed for *Zygote*. His unattested allegation of ownership is insufficient. Doc. 5 ¶ 8. His certificates of copyright registration, Doc. 1-2 & Doc. 5-2, belatedly obtained four decades after *Zygote* folded and its publisher dissolved, have no inherent evidentiary weight. 17 U.S.C. § 410(c). They create "simply a rebuttable presumption" of validity. *Mid. Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995). "Where other evidence in the record casts doubt on the question, validity will not be assumed." *Durham Indus. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980). By all available evidence the Davis series, including the Photograph, was taken as work for hire at the publisher's instance and expense, not on Craig's initiative. He shot the series "on a prearranged assignment for *Zygote* magazine," accompanied by *Zygote*'s reporter,

10

including the Photograph shot at the Fillmore East. Booth Decl. ¶ 6 & Ex. B. Craig "photograph[ed] Miles in 1970 for *Zygote* magazine" after *Zygote* editor Peter Knobler "originally commissioned the Craig photo essay." Booth Decl. ¶¶ 11-14 & Ex. G. So Craig did not own the copyright at all—and he authorized PopMatters' use of the Photograph.

Even apart from those mortal wounds to his claim, Liebowitz's inordinate demands, orders of magnitude higher than a reasonably comparable license, were also unreasonable. He pushed for a $25,000 settlement, then shot for $10,000. Doc. 14-5 pp. 2-3, Doc. 14-13. Yet for just $5,000 Craig had licensed the Photograph among thirteen photographs used in *Fillmore*, and for use in published reviews, or $384.62 apiece. Ex. D. Had PopMatters needed a license on top of what Legacy provided, Getty Images' pricing utility set a benchmark licensing rate of just $138 for broader usage of highly comparable photographs, including the far more renowned *Jack Johnson* cover picture. See Doc. 14-5 pp. 1-3, Doc. 14-14, Booth Decl. ¶¶ 2-3.[2]

Serial lawsuits could not coerce PopMatters to settle so Craig just abandoned his claim, betraying an improper purpose. See *Clear Skies Nev. v. Hancock*, No. 15 C 6708, 2017 U.S. Dist. LEXIS 135511, *5 & 8-9 (N.D. Ill. Aug. 23, 2017) (questioning motivation of plaintiff who likely dismissed "to avoid ever having its claim judged on the merits," in a "multiplicity of suits each involving quick settlements … in keeping with a 'sue-then-settle' strategy").

In a case filed without evidence to support standing or infringement, an order requiring Craig to pay PopMatters' fees under the Copyright Act is fully warranted. The frivolous claims and bad-faith tactics call for compensation and deterrence, if not more punitive measures. Craig

---

[2] Liebowitz's flat denial that Getty Images' licensing rates were "relevant at all" was in bad faith. *Id.* He has repeatedly asked courts to find "the fair market value of a license … based on what Getty Images charges to license a similar photograph to a commercial online blog." *Romanowicz v. Alister & Paine*, No. 17-cv-8937, 2018 U.S. Dist. LEXIS 132066, *10 (S.D.N.Y. Aug. 3, 2018); accord *Terry v. Masterpiece Advertising Design*, No. 17-cv-8240, 2018 U.S. Dist. LEXIS 104667, *10 (S.D.N.Y. June 21, 2018) (Liebowitz client "relies on Getty's pricing utility to support his determination of a reasonable license fee").

has avoided financial sanction when misrepresented by Liebowitz elsewhere. See *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 338-39 (S.D.N.Y. 2019) (sanctioning Liebowitz and his firm for filing a "meritless motion" but "declin[ing] to sanction Craig himself"). Liebowitz is often sanctioned; he "has earned the dubious distinction of being a regular target of sanctions-related motions and orders." *Rice v. NBC Universal Media, LLC*, No. 19-cv-447 (JMF), 2019 U.S. Dist. LEXIS 114690, *1 (S.D.N.Y. July 10, 2019) (discovery sanctions).[3] Yet he brushes it off. Some courts find that any sanction Liebowitz has received "clearly has had no deterrent effect." *Stelzer v. Lead Stories LLC*, No. 19-cv-743-PAB-KMT, 2019 U.S. Dist. LEXIS 178345, *9 (D. Colo. July 3, 2019). Deterring Liebowitz's improper methods will likely require awards against his clients, to give them a greater incentive to compel Liebowitz to discipline himself.

In the alternative, under 28 U.S.C. § 1927, Liebowitz and his firm should be directly obligated to pay the fees PopMatters reasonably incurred in this action. He is directly responsible for the unreasonable litigation tactics employed in this action, and he should be held accountable.

Liebowitz was fully informed last October that PopMatters "believed that the photograph of Miles Davis was a licensed publicity photo, not an infringement." Booth Decl. ¶ 3, Doc. 14-5 p. 2. With no evidence to the contrary, renewing a *willful* infringement claim in this Court despite Legacy's license was a breach of Liebowitz's duties under Fed. R. Civ. P. 11(b)(3). Doc. 1 ¶¶ 15 & 17. So was maintaining the same claim in an amended complaint filed after PopMatters thoroughly spelled out the license issue. Doc. 5 ¶¶ 15 & 17, Doc. 14-13. So was failing to review the copyright registration to ensure it covered the Photograph, for more than a year after first filing suit, requiring a belated amendment at PopMatters' insistence. Doc. 14-14 pp. 1-2; see Doc. 1 ¶ 9 & Doc. 5 ¶ 9. And so was suing over a copyright that evidently belonged

---

[3] See also *Sands v. Bauer Media Group USA, LLC*, No. 17-cv-9215 (LAK), 2019 U.S. Dist. LEXIS 160421 (S.D.N.Y. Sept. 18, 2019) (discovery sanctions); *Berger v. Imagina Consulting, Inc.*, No. 18-cv-08956-CS (S.D.N.Y. Nov. 13, 2019) (contempt sanctions) ("Mr. Liebowitz willfully lied to the Court and willfully failed to comply with lawful Court orders."); *In re Liebowitz*, No. 19-mc-80228-JD (N.D. Cal. Oct. 7, 2019) (disbarment for unauthorized practice); and *Polaris Images Corp. v. CBS Interactive, Inc.*, No. 19-cv-3670 (VEC), 2019 U.S. Dist. LEXIS 175618 (S.D.N.Y. Oct. 9, 2019) (sanctions for failure to comply with court orders).

to *Zygote*'s dissolved publisher under the work-for-hire doctrine, not Craig. In the face of those failures, Liebowitz's dash out of court without engaging the merits speaks for itself. All fees incurred in this action constitute "excess" attorney's fees under Section 1927. To resurrect the suit in this Court, only to dismiss again a day after PopMatters' appearances and first motion, literally "multiplied the proceedings" for purposes of the statute. Liebowitz forced PopMatters to prepare to litigate a facetious, frivolous case, exhibiting objective bad faith subject to sanction.

More should be expected from one of the federal courts' most overactive litigants. Liebowitz "has filed more than 1,600 copyright lawsuits over the past four years," and in 2019 alone, "a whopping 668 cases as of Oct. 10, making him easily the most prolific copyright attorney in the nation." Bill Donahue, *As 'Copyright Troll' Turns National, Will Blowback Follow?*, LAW360 (Oct. 11, 2019), https://www.law360.com/articles/1208101, Doc. 14-15 p. 1. As of this morning that tally had risen to 748 cases filed in 2019, maintaining a filing pace of, on average, more than two new lawsuits per day. Booth Decl. ¶ 15. Almost one of every six copyright actions filed in the United States this year is his work. *Id.* The Seventh Circuit has long been critical of Liebowitz-style misuse of litigation as a "predatory instrument":

> Suits are easy to file and hard to defend. Litigation gives lawyers opportunities to impose on their adversaries costs much greater than they impose on their own clients. The greater the disparity, the more litigation becomes a predatory instrument rather than a method of resolving honest disputes.

*In re TCI, Ltd.*, 769 F.2d 441, 446 (7th Cir. 1985). It has long upheld the remedy: Section 1927. "When an attorney recklessly creates needless costs the other side is entitled to relief." *Id.*

"The copyright holder with no reasonable infringement claim has good reason not to bring suit in the first instance (knowing he cannot force a settlement and will have to proceed to judgment)[.]" *Kirtsaeng*, 136 S. Ct. at 2016. Liebowitz had no sound basis to bring this action, and he demonstrated a studied disinterest in litigating the merits to judgment. Permitting him to freely dip in and out of invalid lawsuits at will, solely for their *in terrorem* effect, would defeat the purposes of the Copyright Act and contravene the orderly pursuit of justice.

### III. PopMatters Should Be Awarded All Fees It Reasonably Incurred in this Action.

All four *Fogerty* factors weigh in favor an award under the Copyright Act, and all elements of the vexatious litigation statute are satisfied. All time spent was necessitated by vexatious litigation conduct. So all fees incurred on this action should be compensated.

"Rule 41(a) 'preserves the plaintiff's right to take a voluntary nonsuit and start over so long as the defendant is not hurt.'" *Marlow v. Winston & Strawn*, 19 F.3d 300, 303 (7th Cir. 1994) (quoting *McCall-Bey v. Franzen*, 777 F.2d 1178, 1184 (7th Cir. 1985)). This case caused PopMatters lasting damage. Craig's claim might have been worth $143, if brought by a plaintiff with standing, and against an unlicensed defendant. Without those predicates, seeking yet another settlement, Liebowitz subjected PopMatters to a $150,000 claim it could not afford to lose and required it to mount a defense it can also ill afford. He should not walk away scot-free.

As detailed in counsel's attached Declarations, PopMatters' fees were reasonable and reasonably incurred. PopMatters spent a reasonable amount of time responding to the issues raised in this action. Booth Decl. ¶¶ 16-17 & Ex. K, Declaration of Scott Kane Stukel ("Stukel Decl.") ¶¶ 3-5 & Ex. H. Its lead counsel charged his standard $425 per hour rate while local counsel charged a discounted rate of $250 per hour. Booth Decl. ¶ 20, Stukel Decl. ¶ 13. Counsel's actual billing rates are "presumptively reasonable." *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1311 (7th Cir. 1996). Six years ago, a client of PopMatters' lead counsel was awarded his fees under 28 U.S.C. § 1927 from the inception of suit at counsel's then-current rate of $409 per hour. *Lightspeed Media Corp. v. Smith*, No. 12-cv-889, 2013 U.S. Dist. LEXIS 168615, *19 (S.D. Ill. Nov. 27, 2013), *aff'd*, 761 F.3d 699 (7th Cir. 2014). The District Judge presiding in that case commented, "that's what you call bargain rates around here." *Id.*, ECF No. 101 at 17:11-13 (S.D. Ill. filed Dec. 10, 2013) (hearing transcript). Lead counsel's current billing rate represents only a modest increase. Booth Decl. ¶ 20. PopMatters' local counsel was most recently awarded fees, at his billing rate of $250 per hour, in *Rivera v. The Bank of New York Mellon*, No. 16 M1 108289 (Cir. Ct. Cook Cty. Nov. 27, 2019). Stukel Decl. ¶ 11 & Ex. I.

14

These rates are well within the range usually charged in intellectual property litigation by similarly experienced attorneys in this Court. See *id.* ¶ 12 & Ex. J, Doc. 14-17, Booth Decl. ¶ 21. See also *Ho v. Taflove*, No. 07 C 4305, 2010 U.S. Dist. LEXIS 134555 (N.D. Ill. Dec. 20, 2010) (awarding $450 per hour to lead counsel in copyright case). Confirming the reasonableness of PopMatters' rates, Liebowitz claims $425 per hour for his work in this matter. Doc. 21-4 p. 1.

PopMatters requests only its fees incurred in this action, not the first action. "As a general rule, a motion seeking an award of attorney fees should be sought in the court or tribunal in which those fees were incurred, unless some statute, court order, or rule requires another procedure." *Schmude v. Sheahan*, 318 F. Supp. 2d 606, 640 (N.D. Ill. 2004) (quoting Mary Francis Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* § 18.05[1] at 18-69 (rev. ed. 2003)), *rev'd on other grounds*, 420 F.3d 645 (7th Cir. 2005). Its pending fee motion filed in the first action separately seeks $37,995 incurred in that case. Doc. 21 p. 2. In this action, its billing statements reflect the reasonably limited amount of time required to force Craig and Liebowitz to fold a second time. PopMatters' billing statements also reflect time spent under LR 54.3 and on the fee petition, which is compensable for Copyright Act defendants. See *Bell*, 825 F.3d at 852.

PopMatters incurred 42 hours on this action before dismissal, and 28.4 hours related to this petition. Booth Decl. ¶ 22 & Ex. K, Stukel Decl. ¶¶ 14-15 & Ex. H. For those 70.4 hours, PopMatters seeks $29,150 in attorney's fees total: $28,050 for its lead counsel's 66 hours expended at $425 per hour, and $1,100 for 4.4 hours expended by its local counsel at $250 per hour. *Id.* It also seeks $32.95 in nontaxable expenses incurred related to the December 10, 2019 hearing. Ex. H p. 4. Separately, PopMatters' bill of costs seeks its lead counsel's *pro hac vice* admission fee. *Id.* p. 1; Doc. 19. All amounts expended should be awarded.

**IV.    Conclusion.**

Wherefore, PopMatters respectfully moves this Court to order Craig to pay its costs incurred in this action, including its reasonable attorney's fees, pursuant to 17 U.S.C. § 505; or to order Richard Liebowitz and his firm to pay the same amounts pursuant to 28 U.S.C. § 1927.

15

Dated: December 12, 2019     Respectfully submitted,

                           / s /   Dan Booth
                           Dan Booth
                           Dan Booth Law LLC
                           60 Thoreau Street #121
                           Concord, MA 01742
                           dan@danboothlaw.com

                           *Counsel for Defendant PopMatters Media, Inc.*

## CERTIFICATE OF SERVICE

    I hereby certify that on this December 12, 2019, the foregoing Petition, its Exhibits (A through K), and the supporting Declarations of Dan Booth and Scott Kane Stukel, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to any identified non-registered participants for whom a mailing address is provided.

                           / s /   Dan Booth
                           Dan Booth