**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

GLEN CRAIG,

                              Plaintiff,                    Docket No. 1:19-cv-05596 (RAG)

          - against -                                      ECF CASE

POP MATTERS MEDIA, INC.

                              Defendant.


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iv

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

LEGAL STANDARD.............................................................................................................. 3

ARGUMENT ......................................................................................................................... 4

**POINT I: PLAINTIFF'S CLAIM IS OBJECTIVELY REASONABLE.................................. 4**

   A. PLAINTIFF'S CLAIM HAS UNDENIABLE FACTUAL SUPPORT ................................... 5

   B. PLAINTIFF'S CLAIM IS ALSO SUPPORTED BY APPLICABLE CASELAW ................................... 6

**POINT II: PLAINTIFF'S CLAIM RAISES UNSETTLED AND NOVEL ISSUES OF
COPYRIGHT LAW ................................................................................................ 8**

**POINT III: PLAINTIFF'S INFRINGEMENT SUIT IS PROPERLY MOTIVATED........ 10**

   A. PLAINTIFF'S COUNSEL SERVES A VALUABLE PUBLIC INTEREST BY SEEKING TO STRICTLY
ENFORCE FEDERAL COPYRIGHT LAW ................................................................................ 10

   B. PLAINTIFF'S SUIT SEEKS TO ESTABLISH A FULLY FUNCTIONING LICENSING MARKET FOR
COMMERCIAL USE OF NEWSWORTHY PHOTOGRAPHS ........................................................ 11

**POINT IV: AN AWARD OF ATTORNEYS' FEES WILL NOT PROMOTE THE
PURPOSE OF THE COPYRIGHT ACT ........................................................... 14**

   A. FEE-SHIFTING WILL FRUSTRATE THE PURPOSE OF THE COPYRIGHT ACT BY ENCOURAGING
THE UNAUTHORIZED USE OF CONTENT AND BY REDUCING THE QUANTITY AND VARIETY OF
WORKS INTRODUCED TO MARKET ................................................................................... 15

   B. FEE-SHIFTING IS NOT JUSTIFIED TO COMPENSATE DEFENDANT OR DETER SUITS BROUGHT
BY INDIVIDUAL PHOTOGRAPHERS ................................................................................... 15

**POINT V: DEFENDANT'S MOTION FOR SANCTIONS SHOULD BE DENIED .......... 16**

   A. DEFENDANT HAS FAILED TO SHOW "BAD FAITH" REQUIRED FOR IMPOSITION OF
SANCTIONS UNDER 18 U.S.C. § 1927 ................................................................................ 17

    B.   DEFENDANT HAS FAILED TO SHOW "BAD FAITH" REQUIRED FOR IMPOSITION OF
         SANCTIONS UNDER THE COURT'S INHERENT POWER ........................................................ 18


**POINT VI:  DEFENDANT'S LEGAL FEES ARE DUPLICATIVE AND GROSSLY
           EXCESSIVE ........................................................................................................ 19**


CONCLUSION ................................................................................................................ 21

# TABLE OF AUTHORITIES

<u>CASES</u>

*Adams v. New York State Educ. Dep't,*
    630 F.Supp.2d 333, 343–44 (S.D.N.Y. 2009) ........................................................................ 20

*Agence France Presse v. Morel,*
    No. 10-CV-2730 (AJN), 2015 WL 13021413, at *4 (S.D.N.Y. Mar. 23, 2015), *aff'd sub*
    *nom. Presse v. Morel*, 645 F. App'x 86 (2d Cir. 2016) ........................................................... 9

*Ariel(UK) Ltd. v. Reuters Grp. PLC,*
    05-cv-9646 (JFK), 2007 WL 194683, at *5 (S.D.N.Y. Jan. 24, 2007).................................... 16

*Baker v. Urban Outfitters, Inc.,*
    431 F. Supp. 2d 351,357 (S.D.N.Y. 2006) *aff'd*, 249 F. App'x 845 (2d ................................. 3

*Bell v. Taylor,*
    No. 1:13-CV-00798-TWP, 2014 WL 902573, at *2 (S.D. Ind. Mar. 7, 2014)........................ 11

*Berkla v. Corel Corp.,*
    302 F.3d 909, 923 (9th Cir. 2002) ......................................................................................... 15

*Berry v. Deutsche Bank Trust Co. Am.,*
    632 F. Supp. 2d 300, 305 (S.D.N.Y.2009) .............................................................................. 5

*Bridgeport Music, Inc. v. WB Music Corp.,*
    520 F.3d 588, 593 (6th Cir. 2008). ........................................................................................ 14

*Brown v. Perdue,*
    2006 WL 2679936 at *4 (S.D.N.Y. 2006) ............................................................................... 8

*Bryant v. Media Right Productions, Inc.,*
    603 F.3d 135, 144 (2d Cir. 2010)............................................................................................ 4

*Canal+ Image UK Ltd. v. Lutvak,*
    792 F. Supp. 2d 675, 683 (S.D.N.Y. 2011) ............................................................................. 9

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,*
    150 F.3d 132, 137 (2d Cir. 1998)............................................................................................ 6

*Chambers v. Nasco,*
    501 U.S. 32, 45 (1991)........................................................................................................... 18

*Chicoineau v. Bonnier Corp.,*
    No. 18-CV-3264 (JSR), 2018 WL 6039387, at *1 (S.D.N.Y. Oct. 16, 2018)........................ 13

*Cooper v. Verifications, Inc.*,
2008 WL 5332190, *12 .................................................................. 19

*Crispin R., Jr. v Bd. of Educ. of the City of Chicago*,
Dist. 299, 09-CV-3993, 2010 WL 3701328, ......................................... 19

*Crispin v. Christian Audigier, Inc.*,
839 F.Supp.2 1086, 1096 ...................................................................... 7

*Delgado v. Vill. of Rosemont*,
2006 WL 3147695, at *2 (N.D.Ill. Oct.31, 2006)................................ 20

*Diamond v. Am-Law Publ'g Corp.*,
745 F.2d 142, 147 (2d Cir. 1984)....................................................... 15

*DLC Management Corp. v. Town of Hyde Park*,
163 F.3d 124, 136 (2d Cir. 1998)....................................................... 18

*Earth Flag Ltd. v. Alamo Flag Co.*,
154 F. Supp. 2d 663,666 (S.D.N.Y. 2001) ............................................ 8

*Eisenschiml v. Fawcett Publications, Inc.*,
246 F.2d 598, 604 (7th Cir. 1957) ........................................................ 8

*Encyclopedia Britannica Educational Corp. v. Crooks*,
542 F.Supp. 1156, 1186-87 (W.D.N.Y.1982)........................................ 9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340, 361 (1991)...................................................................... 6

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
499 U.S. 340, 349-350, 11 S.Ct. 1282, 1290, 113 L.Ed. 2d 328 (1991)................. 15

*Ferdman v. CBS Interactive Inc.*,
342 F. Supp. 3d 515 (S.D.N.Y. 2018) ................................................ 14

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517,535 n.19 (1994)............................................................... 3

*Gattoni v. Tibi, LLC*,
254 F. Supp. 3d 659 (S.D.N.Y. 2017) ................................................ 14

*Goodman v. Universal Beauty Prod. Inc.*, No. 17-CV-1716 (KBF), 2018 WL 1274855, at *1
(S.D.N.Y. Mar. 9, 2018) ...................................................................... 13

*Graham v. James*,
144 F.3d 229, 236 (2d Cir. 1998).................................................................... 6

*Hallfordv. Fox Entm't Grp., Inc.*,
12-cv-1806 (WHP), 2013 WL 2124524, at *1 (S.D.N.Y. Apr. 18, 2013)................................ 5

*Harris Custom Builders Inc. v. Hoffmeyer*,
140 F.3d 728, 730-31 (7th Cir. 1998) ........................................................ 5

*Harris v. Emus Records Corp.*,
734 F.2d 1329, 1333 (9th Cir. .................................................................. 7

*Higgins v. Koch Dev. Corp.*,
11-cv-81 (RLY) (WGH), 2013 WL 3366278, at *2 (S.D. Ind. July 5, 2013) ........................... 9

*Hirsch v. Complex Media, Inc.*,
No. 18 CIV. 5488 (CM), 2018 WL 6985227, at *1 (S.D.N.Y. Dec. 10, 2018)...................... 13

*Janik v. SMG Media, Inc.*,
No. 16-cv-7308 (JGK), 2018 WL 345111, at *14 (S.D.N.Y. Jan. 10, 2018) ......................... 12

*Jardien v. Winston Network, Inc.*,
888 F.2d 1151, 1160 (7th Cir.1989) ........................................................... 20

*Knitwaves, Inc. v. Lollytogs Ltd.*,
71 F.3d 996, 1011 (2d Cir. 1995)................................................................. 3

*L.A. Printex Industries, Inc. v. G&G Multitex, Inc.*,
No. 09-cv-3812 –ODW, 2010 WL 11520186, at *4 (C.D. Cal. Sept. 13, 2010)...................... 7

*Lotus Dev. Corp. v. Borland Int'l, Inc.*,
140 F.3d 70, 75 (1st Cir. 1998)............................................................... 5, 8

*Malibu Media, LLC v. Doe*,
No. 15 CIV. 4369 AKH, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015)........................ 13

*Marshall v. New Kids On The Block P'ship*,
780 F. Supp. 1005, 1009 (S.D.N.Y. 1991) .................................................... 7

*Matthew Bender & Co. v. West Publ'g Co.*,
240 F.3d 116, 122 (2d Cir. 2001)............................................................... 4

*Microsoft Corp. v. Harmony Computers & Elecs., Inc.*,
846 F. Supp. 208, 214 (E.D.N.Y. 1994) ...................................................... 7

*Miller v. Facebook, Inc.*,
l0-cv-264 (WHA), 2010 WL 2198204, at * 1 (N.D. Cal. May 28, 2010) ................................ 9

*Miller v. Glenn Miller Productions, Inc.*,
454 F.3d 975, 988 (9th Cir. 2006) ....................................................................... 7

*Milltex Indus. Corp. v. Jacquard Lace Co.*,
55 F.3d 34, 38 (2d Cir.1995)................................................................................ 17

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
No. C-12-4601 EMC, 2014 WL ....................................................................... 12

*MiTek Holdings, Inc. v. Arce Eng'g Co.*,
198 F.3d 840, 842-43 (11th Cir. 1999) ................................................................ 8

*Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.*,
264 F.3d 622, 639-40 (6th Cir. 2011) .................................................................. 8

*Myeress v. BuzzFeed Inc.*,
No. 18-CV-2365 (VSB), 2019 WL 1004184, at *1 (S.D.N.Y. Mar. 1, 2019)......................... 13

*Neitzke v. Williams*,
490 U.S. 319,325 (1989)........................................................................................ 5

*Norbay Music, Inc. v. King Records, Inc.*,
249 F. Supp. 285, 289 (S.D.N.Y. 1966) .............................................................. 9

*Novelty Textile Inc. v. Wetseal Inc.*,
2014 WL 12603499, at *4 (C.D. Cal. Oct. 22, 2014)............................................ 12

*Oliveri v. Thompson*,
803 F.2d 1265 (2d Cir. 1986)................................................................................ 17

*Otto v. Hearst Commc'ns, Inc.*,
345 F. Supp. 3d 412 (S.D.N.Y. 2018) .................................................................. 13

*Penguin Books US.A. Inc. v. New Christian Church of Full Endeavor, Ltd.*,
96-cv-4126 (RWS),
2004 WL 728878, at *3 (S.D.N.Y. Apr. 6, 2004)................................................. 5

*Psihoyos v. John Wiley & Sons, Inc.*,
11-cv-1416 (JPO), 2013 WL 1285153, at *5 (S.D.N.Y. Mar. 29, 2013) *reconsideration
denied*, 11-cv-1416 (JPO), 2013 WL 4441475 (S.D.N.Y. Aug. 20, 2013) ............ 16

*Revson v. Cinque & Cinque, P.C.*,
    221 F.3d 71 (2d Cir.2000) ................................................................. 17

*Sakon v. Andreo*,
    119 F.3d 109, 114 (2d Cir.1997) ....................................................... 18

*Sands v. CBS Interactive, Inc.*,
    18-cv-7345 (JSR), 2019 WL 1447014 (S.D.N.Y. March 13, 2019) ....... 13

*Schlaifer Nance & Co. v. Estate of Andy Warhol*,
    194 F.3d 323, 338 (2d Cir. 1999) ...................................................... 19

*Silberstein v. Fox Entm 't Grp., Inc.*,
    536 F. Supp. 2d 440,444 (S.D.N.Y. 2008) ......................................... 5

*Torah Safi Ltd. v. Drosnin*,
    00-cv-5650, 2001 WL 1506013, at *5 (S.D.N.Y. Nov. 27, 2001) ......... 10

*Torah Soft Ltd. v. Drosnin*,
    224 F. Supp. 2d 704, 722 (S.D.N.Y. 2002) ........................................ 17

*United States v. International Bhd. of Teamsters*,
    948 F.2d 1338, 1345 (2d Cir. 1991) ................................................... 19

*Viva Video, Inc. v. Cabrera*,
    9 F. App'x 77, 80 (2d Cir. 2001) ....................................................... 5

<u>**Statutes**</u>

17 U.S.C. § 505 ...................................................................................... 3
18 U.S.C. § 1927 ................................................................................... 16

<u>**Treatises**</u>

Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 14.10[D][2] .................. 4

# **INTRODUCTION**

Plaintiff Glen Craig ("Plaintiff" or "Craig"), via counsel, respectfully submits this memorandum of law in opposition to Defendant PopMatters Media, Inc. ("Defendant" or "PopMatters")'s Motion for Attorneys' Fees and Sanctions. Defendant's attorney fee application should be denied in its entirety because Plaintiff's claim is objectively reasonable, raises novel and unsettled questions that help clearly demarcate the boundaries of copyright use in the digital age, and is properly motivated. Accordingly, fee-shifting will not further the purposes of the Copyright Act.

With respect to the facts, Defendant cannot dispute that Plaintiff's claim is factually cognizable.

First, there is no dispute that Defendant expropriated Plaintiff's Photograph and republished it on a commercial platform without Craig's permission. Such conduct exposes PopMatters to objectively reasonable litigation regardless of whether Craig opted to voluntarily withdraw his claim as a measure to conserve resources.

Second, there is nothing in the record which suggests that Craig's claim is frivolous or unreasonable. Indeed, the Plaintiff's lawsuit is objectively reasonable as to the facts pled to support the claim.

Third, Plaintiff's suit was properly motivated by the need to vindicate the public interest, deter future infringement, and establish a fully functioning licensing market for registered copyrights. These are proper causes for the artistic community to litigate. Indeed, Craig has consistently enforced his rights in federal courts for the past three years and this case marks the first time that his claim was dismissed with prejudice.

Accordingly, because fee-shifting will be counterproductive to the purpose of the Copyright Act, Defendant's motion for fees should be summarily DENIED. In addition, Defendant has failed to demonstrate that Plaintiff's counsel acted in bad faith and the motion for sanctions should also be denied.

## BACKGROUND

### Plaintiff Glen Craig

Craig is a professional music photographer and photojournalist who has a well-established career in the business of licensing his photographs for a fee. [Cmpl. ¶ 5]

### Defendant PopMatters

Defendant is a for-profit media company that disseminates news content. [Cmpl. ¶ 6] Defendant operates the website www.popmatters.com (the "Website") which generates substantial revenues from advertising on the Website that is determined, in large part, by the number of page-views or "clicks" the Website receives. [Am. Cmpl. ¶ 6]

### The Photograph of Miles Davis

Craig photographed American jazz musician Miles Davis. (the "Photograph"). [Cmpl. ¶ 7-8] The Photograph was properly registered with the United States Copyright Office and was given registration number VAu001192067, effective November 20, 2014. [Cmpl. ¶ 9, Ex. B]

### Defendant's Unauthorized Re-Publication of the Photograph

Pop Matters ran an article on the Website titled *Various Artists: Miles Ahead Original Motion Picture Soundtrack (the "Infringing Article")*. [Cmpl. ¶ 10, Ex. C] The Infringing Article prominently featured the Photograph. [*Id*.] Pop Matters did not license the Photograph

2

from Plaintiff for its article, nor did Pop Matters have Plaintiff's permission or consent to publish the Photograph on its Website.   [Cmpl. ¶ 11]

Defendant's argument that Craig licensed the Photograph to PopMatters for use on its commercial website is patently false.  If this were true, there would be an attribution (i.e., photo credit) to Craig in the Infringing Article.  There is not.

Defendant's argument that Craig was "work-for-hire" when he created the Photograph is also false.  There is no evidence showing that Craig was a legal employee of some third party when he took the Photograph, nor is there any evidence of a written copyright assignment or "work-for-hire" contractual provision.  Defendant's arguments are based on pure speculation and conjecture.

## LEGAL STANDARD

Section 505 of the Copyright Act states that:

> [i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party I as part of the costs.

17 U.S.C. § 505.

As the plain text of the statute makes clear, "[a]n award of attorney's fees and costs is not automatic but rather lies within the sole and rather broad discretion of the Court." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351,357 (S.D.N.Y. 2006) *aff'd*, 249 F. App'x 845 (2d Cir. 2007) (citing *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1011 (2d Cir. 1995)). The touchstone consideration in the awarding of fees or costs under § 505 is whether doing so furthers the purposes of the Copyright Act.  *See Matthew Bender & Co. v. W Pub. Co.*, 240 F.3d 116, 124-25 (2d Cir. 2001) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517,535 n.19 (1994)); *see*

*also* Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 14.10[D][2] ("The touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act . . .")

In *Fogerty*, the Supreme Court cautioned that "[t]here is no precise rule or formula for making [attorneys' fees] determinations," but nonetheless identified "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" as relevant factors. *Fogerty*, 510 U.S. at 534 n.19; s*ee also Matthew Bender & Co.*, 240 F.3d at 21 (applying the *Fogerty* factors).


## ARGUMENT

## POINT I:    PLAINTIFF'S CLAIM IS OBJECTIVELY REASONABLE

"[T]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001). The objective reasonableness factor is accorded "substantial weight" in determinations whether to award attorneys' fees. *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). The "emphasis on objective reasonableness is firmly rooted in *Fogerty's* admonition that any factor a court considers in deciding whether to award attorneys' fees must be 'faithful to the purposes of the Copyright Act.'" *Matthew Bender & Co.*, 240 F.3d at 122 (citing *Fogerty*, 510 U.S. at 534 n.19). As such, awards of attorneys' fees under § 505 are not justified where a litigant's

copyright claims are deemed objectively reasonable. *Id.* (reversing award of attorneys' fees on grounds that the legal position asserted was objectively reasonable).[1]

Claims are objectively unreasonable when they "have no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001); *see also Silberstein v. Fox Entm 't Grp., Inc.*, 536 F. Supp. 2d 440,444 (S.D.N.Y. 2008) ("the courts of this Circuit have generally concluded that only those claims that are clearly without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable") (quoting *Penguin Books US.A. Inc. v. New Christian Church of Full Endeavor, Ltd.*, 96-cv-4126 (RWS), 2004 WL 728878, at *3 (S.D.N.Y. Apr. 6, 2004)).[2] The "mere fact that a [party] has prevailed does not necessarily equate with an objectively unreasonable claim." *Berry v. Deutsche Bank Trust Co. Am.*, 632 F. Supp. 2d 300, 305 (S.D.N.Y.2009) (citation, quotation marks, and ellipsis omitted).

Here, Plaintiff has advanced an objectively reasonable claim under the Copyright Act because his claim has both factual and legal support.

## A.    PLAINTIFF'S CLAIM HAS UNDENIABLE FACTUAL SUPPORT

To establish a claim of copyright infringement, plaintiff must show two elements: (1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work. *Feist*

---

[1] *See also Harris Custom Builders Inc. v. Hoffmeyer*, 140 F.3d 728, 730-31 (7th Cir. 1998) (vacating award of fees because, inter alia, losing party's claims were objectively reasonable); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 74 (1st Cir. 1998) (affirming denial of fees because copyright holder's "claims were neither frivolous nor objectively unreasonable); *EMI Catalogue P'ship v. CBS/Fox Co.*, 1996 WL 280813, at *2 (S.D.N.Y. May 24, 1996) (holding that copyright owner's claim was "not so objectively unreasonable as to justify" an award).

[2] Similarly, a complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319,325 (1989); *see also Hallfordv. Fox Entm't Grp., Inc.*, 12-cv-1806 (WHP), 2013 WL 2124524, at *1 (S.D.N.Y. Apr. 18, 2013) (an argument "is frivolous when there is indisputably absent any factual or legal basis" for it); *Matthew Bender & Co.*, 240 ("an objectively unreasonable argument is not necessarily frivolous or made in bad faith." ).

*Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998).

There is no dispute that Plaintiff created the Photograph. [Compl. ¶¶ 7-8] Plaintiff then registered the Photograph with U.S. Copyright Office. [Compl. ¶ 9, Ex. B] Defendant published its own article which prominently featured Plaintiff's Photograph. [Cmpl., ¶ 10, Ex. C] Defendant did not have Plaintiff's permission or consent to publish any part of the Photograph and did not seek to obtain a license from Plaintiff. [Compl. ¶ 11]

Defendant has also failed to show that the 2014 licensing agreement with third party Legacy Recordings contemplated use of the Photograph as part of a commercial news article (editorial or otherwise). Defendant may have a defense to willfulness based on its purported subjective belief that use of the Photograph was permissible because it was contained in an alleged press release. But it does <u>not</u> have a defense to liability for copyright infringement.

Here, Defendant does not challenge the facts underlying the elements of Plaintiff's claim. Nor can Defendant dispute that Plaintiff's claim is factually cognizable. Plaintiff's lawsuit is therefore objectively reasonable as the facts pled to support the claim.

**B.**     **PLAINTIFF'S CLAIM IS ALSO SUPPORTED BY APPLICABLE CASELAW**

While "it is a defense to copyright infringement that the alleged infringer possessed a license to use the copyrighted work, *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998), "[t]he burden of proving that a license exists falls on the party invoking the defense." *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F.Supp.2d 537, 561-62 (S.D.N.Y. 2013) (citing *Graham*, 144 F.3d at 236).

It is well-established that a copyright infringement claim lies where defendant's challenged use exceeds the scope or duration of a license. *See, e.g., Microsoft Corp. v. Harmony*

*Computers & Elecs., Inc.*, 846 F. Supp. 208, 214 (E.D.N.Y. 1994) ("plaintiff's claim that defendants exceeded the scope of its license agreements states a claim for copyright infringement rather than breach of contract"); *Marshall v. New Kids On The Block P'ship*, 780 F. Supp. 1005, 1009 (S.D.N.Y. 1991) ("a copyright licensee can make himself a 'stranger' to the licensor by using the copyrighted material in a manner that exceeds either theduration or the scope of the license.").

Here, even if Defendant had a license to republish the Photograph – which it did not - Defendant would be liable for infringement because it exceeded the scope of the license by displaying the Photograph on its Website without Plaintiff's authorization.

Furthermore, Defendant's argument that it cannot be held liable for infringement because Craig licensed the Photograph to Legacy is not legally cognizable. As a matter of law, the granting of a sub-license must be <u>express</u>. *See, e.g., Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) ("It is well established in patent and copyright law that a patent or copyright licensee may not sub-license his licensed intellectual property rights without express permission from the licensor."); *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1333 (9th Cir. 1984) ("a non-exclusive licensee has 'no right to re-sell or sublicense the rights acquired unless he has been expressly authorized to do so.'"); *L.A. Printex Industries, Inc. v. G&G Multitex, Inc.,* No. 09-cv-3812 –ODW, 2010 WL 11520186, at *4 (C.D. Cal. Sept. 13, 2010) ("The consent necessary to properly effectuate a sublicense must be express or explicit, however, not loosely implied from the circumstances."); *Crispin v. Christian Audigier, Inc.*, 839 F.Supp.2 1086, 1096 (C.D .Cal. 2011) ("[implied] sublicensing would allow the sublicensee to use the intellectualproperty for a purpose wholly different from, and independent of, the purpose for which the licensee was granted its license. Were a licensee vested with such authority by

implication, that would usurp the property holder's retained right to control its intellectual property.").

Here, there is no evidence that Craig granted Legacy the right to sub-license to third parties such as PopMatters. Defendant has abjectly misconstrued that agreement in an attempt to manufacture a license defense. [Dkt. #24, p. 9] But had this case proceeded on the merits, Defendant never would have prevailed.

## POINT II:   PLAINTIFF'S CLAIM RAISES UNSETTLED AND NOVEL ISSUES OF COPYRIGHT LAW

Litigation of unsettled or novel issues of law should be encouraged because it helps clarify legal rights, thereby promoting the purposes of the Copyright Act. *See Fogerty,* 510 U.S. at 518 (" . . . it is peculiarly important that the law's boundaries be demarcated as clearly as possible.").[3]   Accordingly, "cases with claims involving novel or complex issues do not warrant a court in making a finding of objective unreasonableness." *Brown v. Perdue*, 2006 WL 2679936 at *4 (S.D.N.Y. 2006); *see also Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663,666 (S.D.N.Y. 2001) ("Indeed, a court should not award attorneys' fees where the case is novel or close because such a litigation clarifies the boundaries of copyright law."); *Canal+ Image UK*

---

[3] *See also Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 639-40 (6th Cir. 2011) (reversing an award of attorneys fees under 17 U.S.C. § 505 because "at the time [the] litigation was before the district court, the law on certain relevant aspects of [the] lawsuit was unsettled."); *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842-43 (11th Cir. 1999) (the interests of the Copyright Act are furthered by "encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure 'that the boundaries of copyright law [are] demarcated as clearly as possible' in order to maximize the public exposure to valuable works.")  (quoting *Fogerty*, 510 U.S. at 526-27); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir. 1998) (when "close infringement cases are litigated, copyright law benefits from the resulting clarification of the doctrine's boundaries. But because novel cases require a plaintiff to sue in the first place, the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff"); *Eisenschiml v. Fawcett Publications, Inc.*, 246 F.2d 598, 604 (7th Cir. 1957) (holding that award of attorneys' fees was an abuse of discretion by trial court where case involved "a very close question.")

8

*Ltd. v. Lutvak*, 792 F. Supp. 2d 675, 683 (S.D.N.Y. 2011) (same); *Belair v. MGA Entm 't, Inc.*,

09-cv-8870 (SAS), 2012 WL 1656969, at *2 (S.D.N.Y. May 10, 2012) (same).[4]

    "The advent of social media, and the internet generally, poses a myriad of issues for both

copyright holders and those seeking to license or exploit their work." *Agence France Presse v.*

*Morel*, No. 10-CV-2730 (AJN), 2015 WL 13021413, at *4 (S.D.N.Y. Mar. 23, 2015), *aff'd sub*

*nom. Presse v. Morel*, 645 F. App'x 86 (2d Cir. 2016). "The federal courts have recognized that

'the whole area of social media presents thorny and novel issues with which courts are only now

coming to grips.' *Id.* (internal quotation omitted); *see also Higgins v. Koch Dev. Corp.*, 11-cv-81

(RLY) (WGH), 2013 WL 3366278, at *2 (S.D. Ind. July 5, 2013) ("Postings on Facebook and

other social media present a unique challenge for courts, due to their relative novelty and their

ability to be shared by or with someone besides the original poster."); *Miller v. Facebook, Inc.*, l

0-cv-264 (WHA), 2010 WL 2198204, at * 1 (N.D. Cal. May 28, 2010) (noting the "slipperiness

of enforcing intellectual property rights in a world where creating and dispersing infringing

material to the public via social networking websites has become all too easy").[5]

    Here, the case at bar asks whether a licensing agreement which contemplates use of the

Photograph as CD cover art should extend to commercial use in an on-line news report by way

of an implied sub-license. This is a novel and unsettled legal issue in the context of commercial

---

[4] *See also Norbay Music, Inc. v. King Records, Inc.*, 249 F. Supp. 285, 289 (S.D.N.Y. 1966) ("The cases reveal that a fee allowance is rarely made where there are unsettled issues of law and fact."); *Encyclopedia Britannica Educational Corp. v. Crooks*, 542 F.Supp. 1156, 1186-87 (W.D.N.Y.1982) ("When faced with novel, unsettled, or complex problems in copyright cases, courts have refused to award attorneys' fees…" (citations omitted)).

[5] "Beyond the courts, academics and practitioners are similarly coming to terms with the implications of social media and traditional copyright law." *Agence France Presse*, 2015 WL 13021413, at *4 (citing Rebecca Haas, "Twitter: New Challenges to Copyright Law in the Internet Age," 10 J. Marshall Rev. Intell. Prop. L. 231, 248 (2010) (anticipating the challenges of enforcing copyright through media like twitter); Kirsten M. Koepsel, "Social Networks and the Uneasy Relationship with Copyright Law," Md. B.J., November/December 2012, at 20, 27 (advising practitioners on how to advise clients with social media and copyright concerns). In the context of the social media revolution, it is "all the more important that litigants be encouraged to test objectively reasonable legal theories in order to better develop the jurisprudential landscape. This weighs strongly against the awarding of attorneys' fees." *Id.*

news reporting, the adjudication of which helps further define the contours of copyright law in the digital age.  Accordingly, the purposes of the Copyright Act are not furthered by awarding fees and costs pursuant to § 505.

**POINT III:**   **PLAINTIFF'S INFRINGEMENT SUIT IS PROPERLY MOTIVATED**

Plaintiff's motivation for filing suit is also a factor the Court may consider under *Fogerty*, 510 U.S. at 534 n.19.  A party is improperly motivated where it asserts claims "not because of [their] inherent merit," but rather because it seeks to "knowingly gamble[] on an unreasonable legal theory in order to achieve a secondary gain - in this case, the leveraging of a settlement . . ." *Torah Safi Ltd. v. Drosnin*, 00-cv-5650, 2001 WL 1506013, at *5 (S.D.N.Y. Nov. 27, 2001).

Here, Plaintiff's claim is properly motivated because this lawsuit seeks to vindicate the public interest by ensuring that the rights of individual photographers are protected against the corporate entities which seek to exploit their property without authorization.  Plaintiff's claim is also motivated by a larger effort, spearheaded by Plaintiff's counsel, to establish a fully functioning licensing market for commercial use of images taken from social media.

Further, Defendant's accusations that Plaintiff or his counsel are a "copyright troll" is absurd.  Plaintiff is a human being who, by his own creative and tenacious efforts, authored the content which Defendant has sought to brazenly exploit.  By Congressional design, federal court is the only venue available for Plaintiff to adjudicate his intellectual property rights and, therefore, Defendant cannot be heard to complain about the cost of litigation relative to the value of the copyright.

**A.**    **PLAINTIFF'S COUNSEL SERVES A VALUABLE PUBLIC INTEREST BY SEEKING TO STRICTLY ENFORCE FEDERAL COPYRIGHT LAW**

"The Copyright Act is intended, not only for a plaintiff to obtain damages for

infringement, but to deter the infringers and other potential infringers from infringing on copyrighted works." *Bell v. Taylor*, No. 1:13-CV-00798-TWP, 2014 WL 902573, at *2 (S.D. Ind. Mar. 7, 2014) (citing *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 231–33, 73 S.Ct. 222, 97 L.Ed. 276 (1952); *F.E.L. Pub'ns, Ltd. v. Catholic Bishop of Chi.*, 754 F.2d 216, 219 (7th Cir.1985)).

Plaintiff's counsel, Liebowitz Law Firm, PLLC ("LLF"), has filed more than 2000 copyright infringement cases nationwide in the last four years. But the firm also represents over 1000 clients, thousands of copyright registrations, and tens of thousands of copyrighted works. The number of lawsuits filed by the firm primarily shows that: (a) violation of the Copyright Act via unauthorized use of photographic materials is an epidemic; (b) the Liebowitz Law Firm is vindicating the public interest by ensuring that a proper licensing market exists for the work of photographers; and (c) individual photographers are retaining Liebowitz Law Firm to file federal lawsuits because there is no other means for them to enforce their rights, particularly given the Congressional failure to establish a Copyright Court to help streamline these types of claims.

## B.  PLAINTIFF'S SUIT SEEKS TO ESTABLISH A FULLY FUNCTIONING LICENSING MARKET FOR COMMERCIAL USE OF NEWSWORTHY PHOTOGRAPHS

Since the advent of on-line publishing, commercial publishers have developed an unfortunate custom and practice of freely expropriating whatever images they want from the internet because it is easy to do and unlikely to be detected by law enforcement. This practice has decimated the licensing market for such works as no commercial entity is going to pay for content that can be taken for free. LLF has spearheaded a movement to end this practice by securing legal precedent which upholds copyright protections for newsworthy photographs. Federal courts which rule in photographers' favor will help create a fully functioning market whereby publishers <u>must</u> seek licenses from content generators such as Craig. This *bona fide*

cause, which is properly represented by Plaintiff in this case, would be undermined by an award of attorneys' fees to Defendant.

Although Defendant labels Plaintiff's counsel a "copyright troll" (relying on a series of cases issued by a single judge), the number of cases filed, standing alone, cannot possibly support use of this derogatory label. *See Janik v. SMG Media, Inc.*, No. 16-cv-7308 (JGK), 2018 WL 345111, at *14 (S.D.N.Y. Jan. 10, 2018) ("without specifics regarding the respective merits of these cases, filing volume does not necessarily signal an improper motivation in this case by counsel, let alone by Janik"); see also *Novelty Textile Inc.* v. Wetseal Inc., 2014 WL 12603499, at *4 (C.D. Cal. Oct. 22, 2014) ("Defendants submit evidence that Plaintiff has filed scores of copyright infringement actions in the Central District. Although this fact is consistent with Defendants theory, it is equally consistent with Plaintiff's being a successful design company that needs to protect its intellectual property from widespread infringement.").

In *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, No. C-12-4601 EMC, 2014 WL 1724478, at *8 (N.D. Cal. Apr. 29, 2014), the court rejected use of the "copyright troll" term on similar grounds:

> Wiley seeks to brand Minden with the odious "Copyright Troll" label. Docket No. 84, at 20. The Court finds such hyperbole unhelpful and slightly disingenuous. **Minden is not an entity which exists solely for the purpose of acquiring rights to pursue litigation.** Rather, as the agency agreements in this case show, they are a legitimate third-party licensing agent with longstanding ties to major photographers. Wiley itself recognizes this by its undisputed business dealings with Minden. That Minden attempted to aggregate the claims of its clients who have allegedly suffered at Wiley's hands is not, on its own, worthy of scorn.

> While the burden of defending frivolous and objectively unreasonable litigation may be eleterious to the objectives of the Copyright Act, it is not the purpose of the Copyright Act "to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful." Thompkins v. Lil' Joe Records, Inc., No. 02–61161–CIV, 2008 WL 896898, at *6 (S.D. Fla. Mar. 31, 2008). **Nor can it be said that the business model of Minden is contrary to the purposes of the Copyright Act; there is value in facilitating the efficient licensing of legitimate copyright holders.**

2014 WL 1724478, at *8 (boldface added).

One of the fundamental elements of the "copyright troll' definition, as applied by the courts, is that copyright trolls sue only to extract settlements, but are not prepared to litigate cases to judgment. See *Malibu Media, LLC v. Doe*, No. 15 CIV. 4369 AKH, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) ("plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does . . . Malibu's motive is to use the federal courts only to obtain identifying information in order to coerce fast settlements.")

Here, in contrast, Plaintiff and the Liebowitz Law Firm is clearly prepared to bring Defendant to final judgment in this case. For example, Liebowitz has obtained judgments of liability for copyright infringement in *Sands v. CBS Interactive, Inc.,* 18-cv-7345 (JSR), 2019 WL 1447014 (S.D.N.Y. March 13, 2019) (summary judgment); *Mango v. BuzzFeed, Inc.,* 356 F. Supp. 3d 368 (S.D.N.Y. 2019) (bench trial); *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412 (S.D.N.Y. 2018) (summary judgment); *Chicoineau v. Bonnier Corp.,* No. 18-CV-3264 (JSR), 2018 WL 6039387, at *1 (S.D.N.Y. Oct. 16, 2018) (summary judgment); and *Goodman v. Universal Beauty Prod. Inc.,* No. 17-CV-1716 (KBF), 2018 WL 1274855, at *1 (S.D.N.Y. Mar. 9, 2018) (summary judgment).

Liebowitz has also helped develop key judicial precedent in U.S. copyright law through defeating motions to dismiss on Rule 12(b)(6). *See, e.g., Myeress v. BuzzFeed Inc*., No. 18-CV-2365 (VSB), 2019 WL 1004184, at *1 (S.D.N.Y. Mar. 1, 2019) (denying motion to dismiss based on Safe Harbor defense under DMCA); *Hirsch v. Complex Media, Inc.,* No. 18 CIV. 5488 (CM), 2018 WL 6985227, at *1 (S.D.N.Y. Dec. 10, 2018) (denying motion to dismiss based on defenses of fair use and *de minimis* copying); *Hirsch v. CBS Broad. Inc.,* No. 17 CIV. 1860

(PAE), 2017 WL 3393845, at *1 (S.D.N.Y. Aug. 4, 2017) (denying motion to dismiss infringement claim and DMCA claim under section 1202(b) on grounds of *de minimis* copying and fair use); *Gattoni v. Tibi, LLC*, 254 F. Supp. 3d 659 (S.D.N.Y. 2017) (denying motion to dismiss DMCA claim for removal of copyright management information); *see also Ferdman v. CBS Interactive Inc.,* 342 F. Supp. 3d 515 (S.D.N.Y. 2018) (dismissing fair use defense on summary judgment with respect to seven photographs).

The rampant theft of intellectual property in the American publishing industry has reached epidemic proportions, as reflected by the number of cases filed by LLF. Liebowitz's copyright enforcement efforts, however controversial they may be on account of their sheer volume, have indisputably had a positive impact on photographic licensing by ensuring that a fully functioning market exists. Clearly, any notion that LLF is filing "strike suits" is belied by the fact that it is prepared to vindicate the public interest by holding infringers accountable for their unlawful conduct.

**POINT IV:** **AN AWARD OF ATTORNEYS' FEES WILL <u>NOT</u> PROMOTE THE PURPOSE OF THE COPYRIGHT ACT**

"It generally does not promote the purposes of the Copyright Act to award attorney fees to a prevailing defendant when the plaintiff has advanced a reasonable, yet unsuccessful claim." *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593 (6th Cir. 2008). Here, an award of fees to Defendant will frustrate the purposes of the Copyright Act by encouraging the unauthorized use of content taken and by reducing the quantity and variety of works introduced to market. Further, fee-shifting is not warranted to compensate Defendant or deter suits brought by individual photographers.

## A. FEE-SHIFTING WILL FRUSTRATE THE PURPOSE OF THE COPYRIGHT ACT BY ENCOURAGING THE UNAUTHORIZED USE OF CONTENT AND BY REDUCING THE QUANTITY AND VARIETY OF WORKS INTRODUCED TO MARKET

"The primary objective of copyright is not to reward the labor of authors, but "[t]o promote the Progress of Science and useful Arts.'' *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 349-350, 11 S.Ct. 1282, 1290, 113 L.Ed. 2d 328 (1991); see also *Davis v. Blige*, 505 F.3d 90, 105 (2d Cir. 2007) ("The core purpose of the copyright law is 'to secure a fair return for an author's creative labor' and thereby 'to stimulate artistic creativity for the general public good.'") (citations omitted); *Diamond v. Am-Law Publ'g Corp.*, 745 F.2d 142, 147 (2d Cir. 1984) ("The principle purpose of the [Copyight Act] is to encourage the origination of creative works by attaching enforceable property rights to them.").

Here, an award of attorneys' fees would only encourage commercial publishers to expropriate photographs rather than engage in their own efforts to capture original photographs or otherwise license images. Allowing Defendant republish photographs without obtaining consent from the copyright holder will ultimately diminish the quantity and variety of content available to the public. *See Berkla v. Corel Corp.*, 302 F.3d 909, 923 (9th Cir. 2002) ("It would be inconsistent with the Copyright Act's purposes to endorse Corel's improper appropriation of Berkla's product by awarding fees.").

## B. FEE-SHIFTING IS <u>NOT</u> JUSTIFIED TO COMPENSATE DEFENDANT OR DETER SUITS BROUGHT BY INDIVIDUAL PHOTOGRAPHERS

"It is increasingly recognized that the person who forces another to engage counsel to vindicate, or defend, a right should bear the expense of such engagement and not his successful opponent." *Fogerty*, 510 U.S. at 529, 114 S.Ct. 1023 (quoting W. Strauss, Damage Provisions of the Copyright Law, Study No. 31 (H. Judiciary Comm. Print 1960)) (internal quotation marks

removed). Here, Defendant could have settled the case for a reasonable amount prior to motion practice, but instead chose to defend in order to prove a point. Ultimately, Craig chose to withdraw in order to conserve his resources. Thus, there is no need to compensate Defendant for its decision to engage in motion practice.

Further, there is no need for the Court to deter Plaintiff, or other individual photographers, who has promoted an objectively reasonable legal theory. *See Ariel(UK) Ltd. v. Reuters Grp. PLC*, 05-cv-9646 (JFK), 2007 WL 194683, at *5 (S.D.N.Y. Jan. 24, 2007) ("The Court recognizes that Defendants incurred considerable expense in defending the copyright claims. Nevertheless, an award of fees and costs would tend to prohibit potential future claimants from litigating questions of fact and law that are not objectively unreasonable and therefore would be contrary to the policies that underlie the Copyright Act."); *see also Psihoyos v. John Wiley & Sons, Inc.*, 11-cv-1416 (JPO), 2013 WL 1285153, at *5 (S.D.N.Y. Mar. 29, 2013) *reconsideration denied*, 11-cv-1416 (JPO), 2013 WL 4441475 (S.D.N.Y. Aug. 20, 2013) (declining motion for fees because there was no "need to further deter Defendant's behavior" and concluding "for the same reasons noted above with respect to objective unreasonableness . . . that the compensation and deterrence purposes underlying the Copyright Act are adequately served by the jury's award").

In sum, because the goals of the Copyright Act would not be further served by awarding Defendant attorneys' fees and costs, the motion should be denied.


**POINT V:    DEFENDANT'S MOTION FOR SANCTIONS SHOULD BE DENIED**

Defendant also moves for sanctions under 18 U.S.C. § 1927 and the Court's inherent power. Defendant's request is redundant, harassing and lacks any evidentiary support.

**A.** **DEFENDANT HAS FAILED TO SHOW "BAD FAITH" REQUIRED FOR IMPOSITION OF SANCTIONS UNDER 18 U.S.C. § 1927**

Sanctions imposed under section 1927 require "clear evidence" of bad faith conduct. See *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986) (emphasizing the high threshold of improper conduct that must be present in order to justify an award of attorneys' fees pursuant to § 1927). Courts have "declined to uphold awards under the bad-faith exception absent both 'clear evidence' that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes' " and "a high degree of specificity in the factual findings of [the] lower courts." *Id.* at 1272; see also *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir.1995) ("[T]he court's factual findings of bad faith must be characterized by a high degree of specificity.") (internal quotation marks omitted).

No such high degree of specificity is possible in the present case. Defendant has failed to show that Plaintiff or LLF's complaint is frivolous or motivated by an improper purpose, such as delay or harassment. Nor do the facts of this case satisfy the § 1927 standard set forth in *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71 (2d Cir.2000). There, the district court identified eleven different instances of sanctionable behavior by the attorney, including: (1) threatening to "tarnish" the reputation of opposing counsel and subject him to the "legal equivalent of a proctology exam"; (2) publicly accusing the opposing attorney of fraud; (3) threatening to interfere with other clients of the opposing attorney; (4) threatening to sue opposing counsel individually and seek discovery of his personal finances; and (5) threatening to send the court a letter accusing opposing counsel of criminal conduct. *Id.* at 77–78. Even under those circumstances, sanctions under § 1927 were still not warranted. *Id.* at 82.

It is clear that whatever the Defendant complains of here pales in comparison to the facts in *Revson*. See *Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 722 (S.D.N.Y. 2002) ("The

conduct of attorneys here, even if it could be faulted in any respect, would still be far from the threshold that *Revson* establishes for imposing sanctions.").

**B.**      **DEFENDANT HAS FAILED TO SHOW "BAD FAITH" REQUIRED FOR IMPOSITION OF SANCTIONS UNDER THE COURT'S INHERENT POWER**

The federal courts' inherent power to sanction is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs... ." *Link v. Wabash R.R.*, 370 U.S. 626, 630 (1962).  Due to the powerful nature of the courts' inherent power, the Supreme Court has advised that judges should exercise "restraint and discretion" in imposing sanctions. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). Sanctions imposed pursuant to the Court's inherent power require a clear showing of bad faith. *Chambers v. Nasco*, 501 U.S. 32, 45 (1991).

In *Chambers*, the Supreme Court set forth the "narrowly defined circumstances" under which federal courts have inherent power to assess attorney's fees against counsel. 501 U.S. at 45.  These include the "willful disobedience of a court order," and when counsel has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.*  The Supreme Court also provided concrete examples of bad faith which would warrant imposition of attorneys' fees against counsel, including acts of fraud upon the Court, abuse of judicial process, delaying or disrupting the litigation, hampering the enforcement of a court order, or in cases where "the temple of justice has been defiled." *Chambers*, U.S. 501 at 45-46.

Since *Chambers*, federal courts have consistently held that a finding of bad faith is required to justify sanctions under the inherent powers of the court. *See, e.g.*, *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) ("this court has required a finding of bad faith for the imposition of sanctions under the inherent power doctrine."); *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir.1997) ("we have construed use of ... the court's inherent

power to be authorized only when there is a finding of conduct constituting or akin to bad faith"); *Schlaifer Nance & Co. v. Estate of Andy Warhol*, 194 F.3d 323, 338 (2d Cir. 1999) (court's sanctions under inherent powers doctrine require "highly specific" finding of bad faith); *Milltex Indus. Corp.,* 55 F.3d at 39-41 (reversing sanction imposed on attorney because there was insufficient evidence of bad faith and because attorney's actions in representing client were neither "entirely without color [of legal legitimacy]" nor undertaken with "improper purposes"); *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (sanctions under inherent powers require finding of bad faith).

Here, once again, Defendant has failed to provide any evidence that Plaintiff or his counsel acted in bad faith. There is no evidence, for example, that Plaintiff committed fraud upon the Court, abused judicial process, delayed or disrupted the litigation, or hampered the enforcement of a court order. Defendant simply disagrees with Plaintiff's legal position on the merits. That's not enough to support a sanctions award. Moreover, Plaintiff's claim was properly motivated.


**POINT VI:    DEFENDANT'S LEGAL FEES ARE DUPLICATIVE AND GROSSLY EXCESSIVE**

Courts decline to award fees for duplicative time entries. *Okoro v Pyramid 4 Aegis*, 11-C-267, 2012 WL 12356838, at *4 (E.D. Wis. Nov. 15, 2012). Further, "[a] court should not award attorneys' fees to a party for time entries that are so vague that it is impossible to discern whether the time is excessive or even relevant to the claim on which the plaintiff prevailed." *Crispin R., Jr. v Bd. of Educ. of the City of Chicago*, Dist. 299, 09-CV-3993, 2010 WL 3701328, at *6 (N.D. Ill. Sept. 10, 2010); *see also Cooper v. Verifications, Inc.*, 2008 WL 5332190, *12 (N.D.Ind. Dec.18, 2008) ("'Where a court finds hours to be insufficiently documented, it may

disallow those hours or reduce the entire fee award by a proportionate amount.' ") (quoting *Delgado v. Vill. of Rosemont*, 2006 WL 3147695, at *2 (N.D.Ill. Oct.31, 2006)); *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir.1989) (noting that courts should not award fees for excessive or duplicative work).

Here, the vast majority of time records produced by the Defendant are duplicative, excessive and/or vague. With respect to those hours billed defending the action in the Northern District, Defendant claims that his attorney expended a total of 63.6 hours, 23.9 hours of which were purportedly spent drafting an unnecessary Rule 41(d) motion. [Dkt. # 14-3; Booth Declr. 23-24] However, the State of Account for Professional Services Rendered through November 6, 2019 (Dan Booth Law LLC) indicates that 58.4 hours were spent in the Northern District action. This amount if grossly excessive and highly duplicative of legal work allegedly performed in the Southern District Action, none of which may be credited. Courts which have awarded attorneys' fees due to a voluntary dismissal have limited payment of Rule 41(d) attorneys' fees to compensation for work done in the first action that cannot be used in a second existing or contemplated action. *See Adams v. New York State Educ. Dep't*, 630 F.Supp.2d 333, 343–44 (S.D.N.Y. 2009); *see also Esquivel v Arau*, 913 F. Supp. 1382, 1392 (C.D. Cal. 1996) ("defendants are entitled to both expenses and attorneys' fees that are reasonably incurred and that will not contribute toward defendants' defense in the present case.") (underline added)

Here, it is not feasible that Mr. Booth expended 63.6 hours in an action where there was absolutely no legal work performed by Defendant. Other than filing a motion for pro hac vice [Dkt. # 11] and a baseless Rule 41(d) motion [Dkt. #14] which was ultimately stricken by the Court [Dkt. #17], there is no indication on the record that Defendant performed any legal work at all with respect to the Northern District Action, which was voluntarily dismissed by Plaintiff

only two months after it was filed.

Indeed, defense counsel failed to perform any legal work in the Northern District that wasn't already performed in the Southern District action. As a result, the 63.6 hours billed by Defense counsel in the Northern District Action is wholly duplicative of the work performed in the Southern District.  Because of its duplicative nature, the Court should decline to credit Booth for any hours billed during this second proceeding.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's application for attorneys' fees under 17 U.S.C. § 505, and sanctions, in its entirety.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC

**/richardliebowitz/**
Richard Liebowitz, Esq.
(*pro hac vice* application
forthcoming)
11 Sunrise Plaza, Ste. 305
Valley Stream, NY 11580
(516) 233-1660

*Counsel for Plaintiff Glen Craig*