IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GLEN CRAIK, ) | Case No. 1:19-cv-05596 (RAG) |
| ) | |
| Plaintiff, ) | **DEFENDANT'S REPLY IN FURTHER** |
| ) | **SUPPORT OF ITS PETITION FOR AN** |
| v. ) | **AWARD OF ATTORNEY'S FEES** |
| ) | **UNDER 17 U.S.C. § 505 AND 28 U.S.C.** |
| POPMATTERS MEDIA, INC. ) | **§ 1927** |
| ) | |
| Defendant. ) | |

PopMatters Media, Inc. ("PopMatters"), in further support of its petition for attorney's fees, Doc. 24 ("Petition" or "Pet."), respectfully replies to the response thereto, Doc. 25 ("Response" or "Resp."), filed on behalf of Glen Craig ("Craig") by his counsel Richard Liebowitz ("Liebowitz"). Nothing in the Response undermines PopMatters' showing that it should be awarded all fees reasonably incurred defending and prevailing in this baseless action.

**I.      There Is No Dispute that PopMatters Is the Prevailing Party in this Action.**

Craig does not dispute that PopMatters is authorized to recover its fees as the "prevailing party" under 17 U.S.C. § 505. As Craig now concedes, "his claim was dismissed with prejudice." Resp. p. 9. His notice of dismissal had erroneously asserted that the case "should be dismissed without prejudice." Doc. 16. But that "notice of dismissal operates as an adjudication on the merits" because he had already raised and dismissed the same claim by notice in a 2018 action in the Southern District of Illinois (the "first action"). Fed. R. Civ. P. 41(a)(1)(B); Pet. pp. 6-7.

So, after dismissing with prejudice, it is mendacious for him to maintain that "Plaintiff and the Liebowitz Law Firm is clearly prepared to bring Defendant to final judgment in this case." *Id*. p. 21. That is transparently false. "There is no question that a dismissal with prejudice makes the defendant the prevailing party for purposes of an award of attorney's fees under § 505. … This is no less true when a case is dismissed because the plaintiff 'threw in the towel'—that

is, where the dismissal is on the plaintiff's own motion." *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008) (citations omitted).

**II.     Craig Abandoned His Claim and Cannot Meet His Burden to Support It.**

The Court can readily infer from Craig's refusal to reach the merits that this action was frivolous and pursued in bad faith. He abandoned his claim a day after PopMatters' first filings. His misleading Response further exhibits his unreasonableness by failing to address evidence in the Petition exposing his claim's fundamental flaws. As Craig puts it: "To establish a claim of copyright infringement, plaintiff must show two elements: (1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work." Resp. p. 13. He contends that "Defendant does not challenge the facts underlying the elements of Plaintiff's claim." *Id.* p. 14. To the contrary, PopMatters showed that neither element was tenable; in essence, Craig alleged that PopMatters infringed a copyright that he never owned, by using a photograph of Miles Davis (the "Photograph") under an express license that Craig had authorized. Pet. pp. 1 & 9-11.

Under the first element, PopMatters presented uncontested evidence that the Photograph was taken in 1970 as part of a series commissioned by *Zygote* magazine. *Id.*; see Doc. 24-1 ¶¶ 6 & 11-14. The commissioning party is the presumptive owner of pre-1978 works governed by the Copyright Act of 1909, and the burden is on the plaintiff to show that such work was not made for hire. *Real Estate Data, Inc. v. Sidwell Co.*, 809 F.2d 366, 371 (7th Cir. 1987); see Pet. pp. 9-10. After more than a year of on-and-off litigation, Craig has given no evidence that he owned the Photograph's copyright, not *Zygote*'s defunct publisher Climatic Sounds, Inc. or its assigns.

Under the second element, the existence of a license is an affirmative defense for a defendant to prove. *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760-61 (7th Cir. 2016). Once its existence is shown, "where only the scope of the license is at issue, the copyright owner

bears the burden of proving that the defendant's copying was unauthorized." *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1985). Accord *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 507 (5th Cir. 2012); *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 235 n.5 (7th Cir. 1995) ("to prevail on a claim of copyright infringement, a plaintiff must prove ownership of a copyright and a copying of protectable expression 'beyond the scope of a license'") (quoting *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 517 (9th Cir. 1993)). PopMatters showed the license issued by Craig, allowing Sony Music Entertainment's Legacy Recordings division ("Legacy") and its licensees to use the Photograph in the packaging of its Miles Davis *Miles at the Fillmore* box set, and "for publicity," including in all promotional materials; and the license Legacy gave PopMatters with the Photograph allowing editorial uses by "Internet review outlets." Doc. 24-5, Doc. 24-7. Craig does not dispute the authenticity or validity of either license, and fails to show that either Legacy or PopMatters exceeded their scope.

Craig's abandoned allegations cannot suffice to show reasonableness in the face of PopMatters' evidentiary showing, especially since he threw in the towel on the merits.

**A.    The Work-For-Hire Doctrine Defeats Craig's Claim of Copyright Ownership.**

Craig fails to rebut PopMatters' showing that the Photograph was a work made for hire, defeating his claim that he owns the copyright and, thus, his standing to sue. Pet. pp. 9-11. His entire argument against the work-for-hire doctrine's application runs just three sentences. It is:

> Defendant's argument that Craig was "work-for-hire" when he created the Photograph is also false. There is no evidence showing that Craig was a legal employee of some third party when he took the Photograph, nor is there any evidence of a written copyright assignment or "work-for-hire" contractual provision. Defendant's arguments are based on pure speculation and conjecture.

Resp. p. 11. Craig assumes, without basis, that the Photograph's copyright belongs to him unless an employment agreement, express work-for-hire agreement, or assignment states otherwise. That might hold true under the Copyright Act of 1976. See 17 U.S.C. § 101 (defining

3

"work made for hire"). But he wholly ignores, and thus does not dispute, PopMatters' point that the 1909 Act (the statute's last major revision before 1976) governs. Pet. pp. 9-10.

Under the earlier Act, work-for-hire status did not require a formal employer-employee relationship or work-for-hire provision. See *Evans Newton, Inc. v. Chi. Sys. Software*, 793 F.2d 889, 894 (7th Cir, 1986) (citing *Aldon Accessories v. Spiegel*, 738 F.2d 548 (2d Cir. 1984)). "[F]or commissioned works, the courts generally presumed that the commissioned party had impliedly agreed to convey the copyright, along with the work itself, to the hiring party." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 744 (1989). That presumption in cases under the 1909 Act is virtually the opposite of what Craig assumes: "in the absence of an agreement to the contrary, the copyright belongs to the person commissioning the work, not the person creating the work." *Real Estate Data, Inc. v. Sidwell Co.*, 809 F.2d 366, 371 (7th Cir. 1987).

It is undisputed that the Photograph is part of Craig's Miles Davis series from 1970. Doc. 5-2 (Copyright Office record for "Miles Davis photos 1970" registration); see also Doc. 1-2 (later registration certificate for "Miles Davis photos" with 1970 year of completion). And PopMatters showed that the series was done "on a prearranged assignment for *Zygote*," as "originally commissioned" by *Zygote*'s editor. Doc. 24-3 p. 1 & Doc. 24-8; see also Doc. 24-1 ¶¶ 6 & 11-14. Under the 1909 Act, the presumption arises that *Zygote*'s publisher owned the copyright in work it commissioned, and the burden is on Craig to disprove it. *Real Estate Data*, 809 F.2d at 371. But Craig has no agreement retaining any copyright in his Davis series. Pet. p. 10. Without such an agreement, Craig's claim of ownership cannot be credited.

**B.     An Express License Immunizes PopMatters from Craig's Claim of Infringement.**

PopMatters also showed that it had a valid license to use the Photograph on its website. Craig simply asserts that PopMatters exceeded the license's scope, but he fails to show how.

Craig's license permits Legacy to use the Photograph "for publicity and inside the music packaging" of *Fillmore*, including "in all related promotional … materials, perpetually and throughout the universe." Doc. 24-5 p. 1 & p. 2 ¶ 2. Craig explicitly granted those rights to not only Legacy but also its licensees, like PopMatters. He warranted, "no use of the [Photograph] by us [Legacy] or our licensees *for any purpose* will violate *any law*…," and further agreed to "indemnify us and *any licensee of ours* against all claims, damages, liabilities, and expenses (including reasonable counsel fees and legal expenses) arising out of any breach of any warranty or representation made by [Craig] in this agreement." *Id.* p. 2 ¶ 5 (emphasis added). So when Craig authorized publicity use by Legacy and its licensees; he also represented that such use would not violate any law (necessarily including copyright law), and agreed to cover any legal expense a licensee would otherwise bear should he welch on that representation.

The promotional copy of the Photograph that Legacy provided to PopMatters bears a license permitting "Internet review outlets" to reproduce it for "editorial uses." Doc. 24-7. Craig does not dispute that PopMatters' online review made such editorial use of the Photograph.

Nevertheless, he tries to poke holes in the license defense from six different lines of attack. Resp. pp. 11-16. But all six attacks are at best unreasonable, and none of them shows that the scope of either license was exceeded.

First, Craig contends that if PopMatters' use were licensed, it would have given him a "photo credit" on the website. Resp. p. 11. The argument is unsustained and unreasonable. A photography license need not entail a credit line; neither his license to Legacy nor its license to PopMatters required attribution. "[A]n author who sells or licenses her work does not have an inherent right to be credited as author of the work." *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998) (quoting 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 8D.03[A][1]).

5

Second, parroting his complaint, Craig asserts that PopMatters "did not have Plaintiff's permission or consent … and did not seek to obtain a license from Plaintiff." Resp. p. 14 (citing Doc. 1 ¶ 11). That is irrelevant. PopMatters had a license from Legacy, Doc. 24-7, which had a license from Craig that expressly covered Legacy's licensees, Doc. 24-5. This Court has found it objectively unreasonable to deem a defendant's copying an infringement simply because it is not *directly* authorized, when the plaintiff had issued licensing agreements to others that permit further licensing to parties like the defendant. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 916 F. Supp. 751, 759 (N.D. Ill. 1995), *adopted*, 1996 U.S. Dist. LEXIS 383 (N.D. Ill. Jan. 12, 1996).

Third, Craig asserts that PopMatters has not shown that his license to Legacy specifically "contemplated use of the Photograph as part of a commercial news article." Resp. p. 14. This argument is frivolous. The existence of the license is not disputed, so Craig has the burden to show that any use exceeded its scope, and he cannot. Craig agreed that any limitation to the rights he granted Legacy must be express. He licensed use of the Photograph "for publicity," without any express (or implied) limitation to the forms that publicity might take. Doc. 24-5 p. 1 "Publicity" is defined as "the dissemination of information or promotional material." *Publicity*, Merriam-Webster, https://www.merriam-webster.com/dictionary/publicity. Craig specifically agreed that the license included use of the Photograph in the *Fillmore* packaging, "and in all related promotional, advertising, marketing and promotional merchandising (i.e., not for resale) materials." Doc. 24-5 p. 2 ¶ 2. The broad licensing terms fully cover PopMatters' use of a promotional copy of the Photograph to accompany a review on its website.

Fourth, Craig states, "even if Defendant had a license to republish the Photograph— which it did not—it exceeded the scope of the license by displaying the Photograph on its

Website without Plaintiff's authorization." Resp. p. 15. That is tautology, not argument. A license is an authorization, and PopMatters did not exceed its scope merely by exercising it.

Fifth, Craig posits that a licensor must expressly authorize any right to sublicense, and claims that "there is no evidence that Craig granted Legacy the right to sub-license to third parties such as PopMatters." *Id*. pp. 15-16. That willfully ignores his burden to prove the scope of the license was exceeded, and ignores the express provisions of Craig's license that allow all publicity use by Legacy and all of its licensees, with no limitation on which other parties Legacy could select as licensees for all rights granted.

Sixth, finally, Craig attacks PopMatters' license defense by wholly misrepresenting it. He contends that "the case at bar asks whether a licensing agreement which contemplates use of the Photograph as CD cover art should extend to commercial use in an on-line news report by way of an implied sub-license." Resp. pp. 17. His misleading string of citations to California case law about "implied sublicensing," like his irrelevant string of citations of cases about "social media," fails to place those matters at issue. *Id*. pp. 15-17. This case involves two express licenses. Craig's license unambiguously permits publicity use of the Photograph, including promotional materials, and contemplates and fully applies to Legacy's licensees. Doc. 24-5. Legacy's license to PopMatters expressly permits reproduction of the Photograph by "editorial uses" in among others, "Internet review outlets." Doc. 24-7. PopMatters' use of the Photograph with its *Fillmore* review was well within the scope of both licenses and required no extension or implication.

### III. All Relevant Considerations Support a Fee Award under 17 U.S.C. § 505.

Viewed in light of the purposes of the Copyright Act, the *Fogerty* factors—the objective unreasonableness, frivolousness, and improper motivation of the claim, and the needs for compensation and deterrence—all strongly support the exercising the Court's discretion to award

7

fees to PopMatters. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n. 19 (1994). This litigation was wholly unreasonable and untenable, as Craig could prove neither that he owns a copyright nor that PopMatters infringed it. He manifested bad faith at every step. His Miles Davis photographs were taken as commissioned work for *Zygote* in 1970, and he offers no basis to find that the copyright ever belonged to anyone other than the defunct publisher or its assigns. Yet Craig concocted a basis for suit by obtaining a copyright registration for the series in 2014 in his own name, under false pretenses, decades after *Zygote* folded and its publisher dissolved. Also in 2014, he gave Legacy a license that immunized Legacy and its licensees from any claims over publicity use and promotional materials. But he sued Legacy's licensee PopMatters in two courts, imposing senseless costs in both. He may not do so with impunity. Those costs must be compensated, and his reckless approach to this case must be deterred.

"The two most important considerations … are the strength of the prevailing party's case and the amount of damages or other relief the party obtained." *Assessment Techs. of WI, LLC v. Wire Data, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004). PopMatters' defenses proved too strong for Craig to face before dismissal, or to rebut now. "When the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong." *Id.* at 437. Craig fails to rebut that strong presumption, which the Seventh Circuit has repeatedly affirmed under 17 U.S.C. § 505 in circumstances highly pertinent to this action.[1]

A fee award spares prevailing defendants the "Pyrrhic victory" of winning the case but still losing money. *Klinger v. Conan Doyle Estate, Ltd.*, 761 F.3d 789, 791-92 (7th Cir. 2014).

---

[1] See, e.g., *Hyperquest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377 (7th Cir. 2011) (plaintiff lacked standing); *Johnson v. Cypress Hill*, 641 F.3d 867 (7th Cir. 2011) (plaintiff had no valid copyright); *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625-26 (7th Cir. 2013) (plaintiff deliberately lied to Copyright Office in claiming ownership); *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 658 F.3d 662 (7th Cir. 2011) (plaintiff licensed defendant's use); *FM Industries, Inc. v. Citicorp Credit Services, Inc.*, 614 F.3d 335 (7th Cir. 2010) (plaintiff failed to prosecute); *Riviera Distribs., Inc. v. Jones*, 517 F.3d 926 (7th Cir. 2008) (plaintiff voluntarily dismissed).

The purposes of the Copyright Act are served when "[p]arties with strong positions are encouraged to stand on their rights, given the likelihood that they will recover fees from the losing (*i.e.*, unreasonable) party." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016). "For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from enforcing his rights." *Assessment Techs.*, 361 F.3d at 437.

These considerations strongly support an award, and no countervailing considerations claimed by Craig can withstand scrutiny.

Craig asserts that he "has consistently enforced his rights in federal courts for the past three years and this case marks the first time that his claim was dismissed with prejudice." Resp. p. 9. But Liebowitz has obtained no success on the merits in his other cases for Craig, because their standard litigation game plan is to dismiss before the merits must be engaged.[2] In their most noted case, several defendants won summary judgment because Liebowitz adduced no evidence that they played a role in any infringement, and the remaining defendant won summary judgment over Craig's claims for statutory damages and attorney's fees, and his claims under the DMCA. *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 330-31, 335-38 (S.D.N.Y. 2019). And for a frivolous motion to disqualify the defendants' expert, Liebowitz and his firm were sanctioned $98,532.62 under Section 1927. *Id.* at 338-39; see *id.*, No. 16-cv-5439, 2019 U.S. Dist. LEXIS

---

[2] See *Craig v. Vice Media LLC*, No. 16-cv-4967 (E.D.N.Y. 2016) (stipulated dismissal one month after second amended complaint); *Craig v. Sony Music Entm't, Inc.*, No. 17-cv-1948 (S.D.N.Y. 2017) (same); *Craig v. Genius Media Group, Inc.*, No. 17-cv-983 (E.D.N.Y. 2017) (voluntary dismissal one month after complaint); *Craig v. Corus Entm't, Inc.*, No. 17-cv-4425 (S.D.N.Y. 2017) (settlement and stipulated dismissal three months after complaint); *Craig v. Buzzfeed, Inc.*, No. 17-cv-5301 (S.D.N.Y. 2017) (voluntary dismissal nine days after complaint); *Craig v. Oath, Inc.*, No. 17-cv-8011 (S.D.N.Y. 2017) (voluntary dismissal three days after defendant moved to dismiss); *Craig v. Vice Media LLC*, No. 18-cv-1061 (E.D.N.Y. 2018) (settlement and stipulated dismissal three months after defendant's answer); *Craig v. PopMatters Media, Inc.*, No. 18-cv-1713 (S.D. Ill. 2018) (the "prior action") (voluntary dismissal three months after complaint); *Craig v. Time Warner Book Group Inc.*, No. 19-cv-220 (S.D.N.Y. 2019) (notice of settlement six weeks after complaint); *Craig v. Gannett Satellite Info. Network, LLC*, No. 19-cv-8563 (S.D.N.Y. 2019) (same, seven weeks after complaint); *Craig v. Gallery M Inc.*, No. 19-cv-2413 (D. Colo. 2019) (same, with stipulation of dismissal, ten weeks after complaint).

113771 (S.D.N.Y. July 9, 2019). Typically unwilling to try to prove damages, Craig settled with the last defendant last month. Status Letter, *id*. (S.D.N.Y. filed Dec. 30, 2019).

Craig posits that litigating unsettled or novel issues generally benefits the copyright law. Resp. pp. 16-18. That is no basis to deny a fee award where he did not litigate anything at all.

He argues that PopMatters "could have settled the case for a reasonable amount prior to motion practice, but instead chose to defend in order to prove a point. … Thus, there is no need to compensate Defendant for its decision to engage in motion practice." Resp. p. 24. His distorted view of merits-based litigation betrays his sue-and-settle agenda. It is not reasonable to find fault in a defendant for defending. See *Harris Custom Builders, Inc. v. Hoffmeyer*, No. 98-3662, 1999 U.S. App. LEXIS 13515, *5 (7th Cir. June 19, 1999) ("the rejection of the settlement offer did not prohibit an award of attorney fees"). While there can be no "reasonable amount" for settling a claim with a plaintiff lacking standing who authorized use, PopMatters twice made an $800 offer of judgment that Craig twice spurned.³ See Pet. pp. 1-2. Maintaining a pretextual claim only long enough to force PopMatters to respond warrants compensation and deterrence.

**IV. The Record Exposes Liebowitz's Vexatious, Bad Faith Approach to this Case.**

Liebowitz's main argument against imposing sanctions under 28 U.S.C. § 1927 is that it Second Circuit case law does not support it. See Resp. pp. 25-26 (citing cases). In the Second Circuit, "§ 1927 requires subjective bad faith of counsel." *MacDraw, Inc. v. CIT Grp. Equip. Fin.*, 73 F.3d 1253, 1262 (2d Cir. 1996). And "a sanction under § 1927 requires a 'clear showing of bad faith.'" *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (quoting *Kamen v. Am.*

---

³ The Response does not contest that $800 was more than the case was worth. As PopMatters showed, comparable licenses for photos highly similar to the Photograph are available for $138, and PopMatters had at most $3.42 in revenue related to the use. Pet. pp. 3 & 11. Even if Craig could have overcome the standing and license issues, he could not have set out the evidentiary basis needed for any award above the $750 statutory minimum provided in 17 U.S.C. § 504(c). See *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1016-17 (7th Cir. 1991); see also *Coach, Inc. v. 3D Designers Inspirations*, 70 F.3d 942, 947 (C.D. Ill. 2014) (statutory damages "should represent some approximation of actual damages").

*Tel. & Tel. Co.*, 791 F.2d 1006, 1010 (2d Cir. 1986)).[4] But a different standard governs Section 1927 in the Seventh Circuit, where "objective bad faith is enough." *In re Lisse*, 921 F.3d 629, 641 (7th Cir. 2019). And there is no "clear showing" test; rather, "some evidence must exist that an attorney acted with either subjective or objective bad faith." *In re Brand Name Prescription Antitrust Litig.*, No. 94 C 897, 1999 U.S. Dist. LEXIS 6968, *26 (N.D. Ill. Apr. 29, 1999).

PopMatters more than satisfied the applicable standard. See Pet. pp. 12-13. "Attorneys demonstrate objective bad faith when they pursue a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Lisse*, 921 F.3d at 641 (internal quotation omitted). Pursuing baseless claims while unwilling to engage in any motion practice is vexatious.

Why *did* Liebowitz sue PopMatters twice, but notice dismissal of the first action after three months and of this second action after only two, a day after the first responsive filings? He could muster no reason when the parties conferred under LR 54.3, but said he would provide one in response to the Petition. Doc. 21 p. 2, Doc. 21-3. The weak, *post hoc* rationale he now offers: "Craig chose to withdraw in order to conserve his resources." Resp. p. 24. That canard does not justify the resources he made PopMatters spend on a lawsuit baseless from the outset. The time for Craig to conserve his resources would have been before suit, or when PopMatters' served its $800 Rule 68 offer during the first action, or when it renewed the offer on August 29, 2019. Doc. 14-5, Doc. 14-14, Doc. 24-2. It showed bad faith to think of costs only after PopMatters labored to develop substantive defenses and file a Rule 41(d) motion that Craig would never address.

As PopMatters explained, "Liebowitz showed no interest in litigating the merits because the case had none." Pet. p. 8; *id.* p. 13 (noting his "studied disinterest in litigating the merits to

---

[4] Liebowitz's Section 1927 argument misleadingly quotes Second Circuit cases applying its even higher standard for sanctions under the bad-faith exception to the American Rule. See Resp. p. 25 (quoting *Olivieri*, 803 F.2d at 1272 & *Millitex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir. 1995)). It is unreasonable to rely on misquoted passages about the wrong legal standard from a different Circuit.

judgment"). In his self-aggrandizing view, his firm "has spearheaded a movement" that seeks "to establish a fully functioning licensing market for commercial use of newsworthy photographs" through mass litigation. Resp. p. 19. But as he acknowledges, that market is already in operation: Craig "has a well-established career in the business of licensing his photographs for a fee." *Id.* p. 10. Suing valid licensees, without standing, destabilizes the market and enables copyright misuse. And dropping suit as soon as a defendant defends cannot support a licensing market. The Seventh Circuit often warns against this sort of opportunistic, "extortionate" licensing racket:

> [M]any persons or firms accused of copyright infringement find that "it is more cost-effective to simply capitulate" than to fight, even when the alleged claim is of dubious merit. … Copiers or alleged copiers may be "induced into licensing [that is, paying a fee for a license to reproduce] the underlying work, even if this license is unnecessary or conveys non-existent rights."

*Klinger*, 761 F.3d at 791, quoting Ben Depoorter & Kirk Walker, "Copyright False Positives," 89 Notre Dame L. Rev. 319, 343-45 (2013). Lambasting "the Art of the Intellectual Property Shake-down," the Seventh Circuit defined "trolling" as "bringing strategic infringement claims of dubious merit in the hope of arranging prompt settlements with defendants who would prefer to pay modest or nuisance settlements rather than be tied up in expensive litigation." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1096-97 (7th Cir. 2017). "This business strategy is far removed from the goals of the Constitution's intellectual property clause to 'promote the Progress of Science and useful Arts.'" *Id.* (quoting U.S. Const. art. I, § 8, cl. 8).

The "copyright troll" sobriquet that Liebowitz disdains squarely fits his opportunistic behavior. He suggests that a lack of bad faith can be inferred from his law firm's "more than 2000 copyright infringement cases nationwide in the last four years," by his count. Resp. p. 19. But his overall track record does not deter a finding that he litigated *this* action in bad faith, and he can claim but meager success. He cites judgments on liability obtained by his firm in just five

12

of those cases,[5] and Rule 12(b)(6) motions survived in five others, all in the Southern District of New York. *Id.* pp. 21-22. With that win record of about 0.5%, the vast majority of Liebowitz's cases "have been voluntarily dismissed, settled, or otherwise disposed of before any merits-based litigation." *McDermott v. Monday Monday, LLC*, No. 17-cv-9230, 2018 U.S. Dist. LEXIS 184049, *5 (S.D.N.Y. Oct. 26, 2018). Other than default judgments, his firm's rare litigated victories in copyright cases are far overshadowed by its many losses on a wide range of substantive grounds,[6] and for failure to prosecute,[7] and as a sanction for missing deadlines.[8] None of his cases in this Court have come close to reaching the merits, and he does not claim any non-default judgments among his 300+ cases filed outside New York. See Doc. 14-15 p. 1.

---

[5] Two of those five cases netted only minimal statutory damages awards. *Otto v. Hearst Commc'ns, Inc.*, No. 17-cv-4712 (S.D.N.Y. July 24, 2019) (awarding $750); *Mango v. Buzzfeed, Inc.*, 356 F. Supp. 3d 368, 371, 375-76 (S.D.N.Y. 2019) (awarding $3,750). He settled the other three cases and stipulated to dismissal after judgment, avoiding any damages inquest. *Goodman v. Univ. Beauty Prods., Inc.*, No. 17-cv-1716 (S.D.N.Y. Mar. 30, 2018); *Chicoineau v. Bonnier Corp.*, No. 18-cv-3264 (S.D.N.Y. Mar. 13, 2019); *Sands v. CBS Interactive, Inc.*, No. 18-cv-7345 (S.D.N.Y. Apr. 18, 2019).

[6] See *Gattoni v. Tibi, LLC*, 254 F. Supp. 3d 659 (S.D.N.Y. 2017) (plaintiff lacked copyright registration); *Mantel v. Microsoft Corp.*, 2018 U.S. Dist. LEXIS 53549 (same); *Rock v. Enfants Riches Deprimes LLC*, 2019 U.S. Dist. LEXIS 47127 (S.D.N.Y. Mar. 21, 2019) (same); *Papazian v. Sony Muc Entm't, Inc.*, 2019 U.S. Dist. LEXIS 193904 (S.D.N.Y. Nov. 22, 2017) (plaintiff lacks Article III standing); *Cramer v. Cecil Baker & Partners, Inc.*, 2019 U.S. Dist. LEXIS 110724 (E.D. Pa. July 1, 2019) (same); *Zuma Press, Inc. v. Getty Images (US), Inc.*, 349 F. Supp. 3d 369 (S.D.N.Y. 2018) (equitable estoppel); *id.*, 2019 U.S. Dist. LEXIS 109967 (S.D.N.Y. July 1, 2019) (valid license); *Rudkowski v. Mic Network, Inc.*, 2018 U.S. Dist. LEXIS 49975 (S.D.N.Y. Mar. 23, 2018) (de minimis use); *Downs v. Oath, Inc.*, 385 F. Supp. 3d 298 (S.D.N.Y. 2019) (DMCA § 512 immunity); *Parisienne v. Heykorean, Inc.*, 2019 U.S. Dist. LEXIS 20538 (S.D.N.Y. Nov. 26, 2019) (same, vacating default); *Kanongataa v. ABC*, 2017 US Dist LEXIS 95812 (S.D.N.Y. June 21, 2017) (fair use); *Clark v. Transp. Alternatives, Inc.*, 2019 U.S. Dist. LEXIS 46274 (same); *Yang v. Mic Network., Inc.*, 2019 U.S. Dist. LEXIS 163453 (S.D.N.Y. Sept. 24, 2019) (same); *Craig v. UMG*, 380 F. Supp. 3d 324 (S.D.N.Y. 2019) (defendants played no role in infringement). Cf. *Sadowski v. Block Commc'ns*, No. 18-cv-2015 (S.D. Ill. Sept. 16, 2019) (lack of personal jurisdiction).

[7] See *Vincheski v. Univ. of Minn.*, No. 16-cv-4590 (S.D.N.Y. Sept. 9, 2016); *Mango v. Urbanlinx Media, Inc.*, No. 17-cv-7728 (S.D.N.Y. Jan. 22, 2018); *Tabak v. Itsbizkit, LLC*, No. 17-cv-2962 (E.D.N.Y. Aug. 21, 2018); *Stelzer v. Rhibot Art LLC*, 2019 U.S. Dist. LEXIS 102557 (E.D.N.Y. June 18, 2019). See also *Pierson v. Straus Newspapers, Inc.*, 2017 U.S. Dist. LEXIS 160157 (S.D.N.Y. Sept. 27, 2017) (report and recommendation); *Laffont v. Schneps Cmty. News Grp., LLC*, 2019 U.S. Dist. LEXIS 78794 (E.D.N.Y. May 8, 2019) (same); *Southall v. Crawford Constr. Corp.*, No. 19-cv-5800 (N.D. Ill. Dec. 6, 2019).

[8] See *Stelzer v. Lead Stories LLC*, 2019 U.S. Dist. LEXIS 178344 (D. Colo. June 11, 2019), *adopted*, 2019 U.S. Dist. LEXIS 178345 (D. Colo. July 3, 2019); *Sands v. Bauer Media Grp. USA, LLC*, 2019 U.S. Dist. LEXIS 205558 (S.D.N.Y. Nov. 26, 2019). Cf. *Verch v. 121 Silicon Valley, Inc.*, No. 19-cv-5098 (N.D. Cal. Nov. 18, 2019) (revoking Liebowitz's *pro hac vice* admission), *id.*, (N.D. Cal. Dec. 3, 2019) (dismissing for failure to substitute counsel).

If good-faith litigation to trial and judgment on the merits is ever on Liebowitz's radar, it was not in this action. Suing and dismissing PopMatters twice, without a valid evidentiary basis to proceed, was wholly unjustified and sanctionable.

## V.      PopMatters Should Be Awarded All Fees and Costs Requested.

PopMatters should be awarded all time expended on this frivolous action. The Response contests the fees claimed with a cut-and-paste job, reciting almost verbatim from Liebowitz's November 27, 2019 letter, written during the LR 54.3 conferral process, before PopMatters filed the Petition he now purports to respond to. Compare Doc. 21-4 p. 2 with Resp. pp. 27-29. The argument was unsubstantiated and largely incoherent then, and December did not mature it.

Liebowitz calls PopMatters' time duplicative of work spent on the first action. Resp. p. 28. That is baseless. He points to no duplicative time entries because each case required distinct work. As Liebowitz well knows, the Petition excludes all fees incurred in the first action, which PopMatters is pursuing separately. Pet. p. 15; Doc. 21-6 pp. 3-4. By regurgitating his erroneous November argument while ignoring the Petition as filed, Liebowitz again violates Rule 11(b)(3). See Pet. pp. 12-13. Equally frivolous is his argument about which fees from a prior action may be awarded under Rule 41(d). Resp. p. 28; see Doc. 21-4 p. 2 n.1. The Petition is not a second Rule 41(d) motion and it seeks only fees incurred in this Court.

Of course, PopMatters *had* moved under Rule 41(d), the day before dismissal. Doc. 14. Liebowitz calls that motion "baseless" and "unnecessary." Resp. p. 28. If it were baseless Craig could have contested it, but he fled. Liebowitz routinely dismisses to avoid paying fees. See Pet. p. 8 n. 1. And the motion precipitated dismissal, so it proved essential to victory.

All time spent on the Rule 41(d) motion should be compensated. Though he fulminates that PopMatters' time was excessive, Liebowitz does not object to any other specific time spent.

14

He does not object to either attorney's hourly billing rate, waiving an issue he had flagged under LR 54.3. See Doc. 21-4 p. 3. He does not oppose any time or costs incurred by local counsel. And since he simply repeats his November argument against the work and time records PopMatters' provided to him on November 7, 2019,[9] which naturally did not cover any time spent since, he waives any objection to that time too. See Doc. 21-2; Doc. 21-5.

Yet he contends that "there was absolutely no legal work performed by Defendant" in this action. Resp. p. 28. Counsel incurred 94.9 hours total in this action: 42 hours before dismissal, 28.4 hours related to the Petition under LR 54.3, and 24.5 hours since the Response. Pet. p. 15; see Declaration of Dan Booth & Ex. A filed herewith. PopMatters' billing records detail the services performed. *Id.*, Doc. 24-9, Doc. 24-12. All time claimed was reasonably and necessarily expended. Work is no less compensable when expended at an early stage of litigation or when resolved by voluntary dismissal. See *Bell v. Lantz*, 825 F.3d 849, 850 (7th Cir. 2016); *Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005) (vacating denial of Section 505 award to defendant "because much of the work performed by its lawyers related to various defenses that were ultimately never addressed or resolved"); *Budget Cinema, Inc. v. Watchtower Assocs.*, 81 F.3d 729, 732 (7th Cir. 1996) (vacating denial; prevailing party's "entitlement under Section 505" does not require "protracted copyright litigation").

The Response offers no valid reason to deny PopMatters a full award of fees and costs reasonably incurred in this action. Instead, its frivolous, ill-considered, and unreasonable arguments provide additional reasons to grant the Petition in its entirety.

---

[9] The Response's reference to "58.4 hours" repeats a figure miscalculated in the work and time records that PopMatters provided to Liebowitz under Local Rule 54.3(d). Doc. 21-5 p. 3. PopMatters explained the miscalculation during the conferral process. Doc. 21-6 p. 2 n. 2. The Petition, and the time records filed in support, accurately reflect the correct figures for the time spent on this action. See *id.*; Doc. 24-12.

Dated: January 7, 2020            Respectfully submitted,

                                           / s /  Dan Booth
                                           Dan Booth
                                           Dan Booth Law LLC
                                           60 Thoreau Street #121
                                           Concord, MA 01742
                                           dan@danboothlaw.com

                                           *Counsel for Defendant PopMatters Media, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on this January 7, 2020, the foregoing Reply brief, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, including Plaintiff's duly designated local counsel.

                                           / s /  Dan Booth
                                           Dan Booth